ELLIS, Appellant, vs. CHICAGO & NORTHWESTERN RAIL-
WAY COMPANY, Appellant, and WISCONSIN TRACTION,
LIGHT, HEAT & POWER COMPANY, Respondent.

*March 5—May 21, 1918.*

*Assignment of causes of action: Validity: Good faith: Real party in
interest: Carriers of passengers: Injuries: Collision between
railway train and interurban car: Excessive speed: Negligence:
Proximate cause: Contribution between joint wrongdoers.*

1. Separate actions by two persons injured in a collision between a
railway train and an interurban car of a traction company
were brought both against the railway company and the trac-
tion company. Trial of one action resulted in a verdict against
the traction company and a nonsuit as to the railway company,
no evidence as to the latter's negligence having been offered,
and afterwards that action was discontinued. Thereafter a
stockholder of the traction company purchased and took an
assignment of both claims, borrowing the money for that pur-
pose from the traction company and giving his note therefor.
He then brought actions against the railway company, in each
of which the traction company was afterwards brought in as a
defendant; and later such actions were consolidated. There
being positive, undisputed evidence that plaintiff bought the
claims in his own right and at his own risk, the mere fact that
he took the assignments because of his interest in, and with a
view to aiding, the traction company did not render such as-
signments void or ineffectual or justify the trial court in chang-
ing findings by the jury that the assignments were not taken in
behalf of the traction company and that plaintiff and not the
traction company was the real party in interest.

2. A finding by the jury, sustained by the trial court, that at the
time of the collision the railway train was running at a speed
in excess of twelve miles per hour, cannot be disturbed on ap-
peal, the evidence on that question being conflicting.

3. The running of a railway train at an excessive rate of speed, in
violation of law, at the time of a collision with an interurban
car was negligence; and it was a proximate cause of the acci-
dent where the collision would not have occurred had the train
been running at lawful speed.

4. The rule that there can be no contribution between joint tort-
feasors is not applicable to a case in which there was no moral
turpitude and no wilful or conscious wrong.

5. Thus, where judgment is rendered against both a railway company and a traction company for damages on account of personal injuries sustained in a collision between a train and an interurban car, and though both were negligent, one in failing to ascertain that the train was coming and the other in running the train at an unlawful speed, yet it appears that there was no wilful or conscious wrong, the company which pays the whole judgment may compel contribution from the other.

VINJE, ROSENBERRY, and ESCHWEILER, JJ., dissent in part.

APPEALS from a judgment of the circuit court for Outagamie county: E. V. WERNER, Circuit Judge. *Reversed on both appeals.*

In a collision between the defendant *Chicago & Northwestern Railway Company,* hereinafter called *Railway Company,* and the *Wisconsin Traction, Light, Heat & Power Company,* hereinafter called *Traction Company,* Al. M. Frederick and Ben Schneider were injured and each commenced suit against both companies to recover damages. One of said suits was tried, in which a nonsuit was granted as to the *Railway Company* and verdict rendered in favor of Schneider against the *Traction Company* for $4,200 damages. Afterwards the plaintiff took an assignment of both claims.

Separate actions were commenced by plaintiff against the defendant *Railway Company* on the claim of each of said injured persons. The original complaints were the same, except as to description of the injuries sustained by the respective assignors, and charged negligence of the defendant *Railway Company.*

Several defenses to the complaints were set up. Afterwards, on application of defendant *Railway Company,* the defendant *Traction Company* was made a party to both actions, and the plaintiff served an amended complaint in each case setting up negligence on the part of the *Traction Company* as well as negligence of the *Railway Company,* and that the negligence of both defendants concurred and was a proximate cause of the collision and the injuries suffered.

The *Railway Company* answered the amended complaint, and among other defenses set up that the *Traction Company* and not the plaintiff was the real party in interest.

The *Traction Company* answered in each case denying negligence and setting up a cross-complaint against the *Railway Company* charging it with active negligence causing the collision and injuries, and further alleging that if any inadvertence on the part of the *Traction Company* contributed to the collision and injury such inadvertence was secondary and passive, by reason of which affirmative primary fault of the *Railway Company* the judgment should provide for execution to first issue against the *Railway Company* and not against the *Traction Company* until a showing was made of inability of the plaintiff to collect from the *Railway Company*. The answer further alleged that if it shall be determined that the assignments to the plaintiff were not made in good faith and that the cause of action had been in effect assigned and released to the *Traction Company*, then and in such event it must be determined and this defendant alleges the fact to be that the collision and injuries were proximately caused by the negligence of the *Railway Company* in the same or a greater degree than by the negligence of the *Traction Company*, and that the *Railway Company* and *Traction Company* were not at the time of the collision joint tort-feasors, and that if any negligence on the part of the *Traction Company* contributed to produce the collision such negligence consisted of mere inadvertence and was a mere concurrence with the original primary and active negligence of the defendant *Railway Company*.

The *Railway Company* demurred to the cross-complaint of the *Traction Company* in both cases, which demurrer was overruled.

Afterwards the *Traction Company* amended its answer by inserting a second cause of action in its cross-complaint against the *Railway Company*, in which it was alleged in

substance that if it should be determined that the causes of action set forth in the complaint were not assigned in good faith to the plaintiff, but assigned and released to the *Traction Company,* and if it should further be determined that the negligence of the *Traction Company* was an active and primary cause of the collision, then the negligence of the *Railway Company* concurred with the negligence of the *Traction Company,* and that the negligence of each was inadvertent and unaccompanied by any intent to violate the law or rights of the assignors.

There are some other allegations to the effect that the operators of the engines, trains, and cars of the respective companies perform or ordinarily attempt to perform the duty of keeping a lookout for the engines, trains, and cars of the other company, and in addition thereto the conductor in charge of the cars of the *Traction Company,* in pursuance of the custom and practice, flags his car or train across the intersection of the tracks of the two companies.

The *Railway Company* demurred to the cross-complaint contained in the amended answer of the *Traction Company,* which was sustained and an order entered directing judgment thereon in favor of the defendant *Railway Company* with leave to the *Traction Company* to amend its cross-complaint.

The answer of the *Traction Company* was not amended and the case went to trial on the issues made. Afterwards upon application of the plaintiff an order was made consolidating the actions. The case went to trial and the following verdict was returned:

"(1) Was Al. M. Frederick and Ben Schneider injured in a collision at the intersection of the *Traction Company* and *Railway Company* tracks on Commercial street in the city of Neenah, Wisconsin, January 21, 1915? *A.* (by the court). Yes.

"(2) Did the conductor of the *Traction Company* in charge of the street car, charged with the duty to exercise

the highest degree of care reasonably to be expected from human vigilance and foresight in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of the business of operating the defendant *Traction Company's* street railway for the safety of its passengers in said car, fail to discharge such duty in ascertaining whether the train of the defendant *Railway Company* was coming on and over the crossing on the night of the collision? *A.* Yes.

"(3) If you answer question No. 2 'Yes,' then answer this question: Was such failure the proximate cause of the injuries sustained by Al. M. Frederick and Ben Schneider? *A.* Yes.

"(4) Did the motorman of the defendant *Traction Company* in charge of the street car, charged with the duty to exercise the highest degree of care reasonably to be expected from human vigilance and foresight in view of the mode and character of the conveyance adopted and consistent with the practical prosecution of the business of operating the defendant *Traction Company's* street railway for the safety of its passengers on said car, fail to discharge such duty in ascertaining whether the train of the defendant *Railway Company* was coming on and over the crossing on the night of the collision? *A.* No.

"(5) [Not answered.]

"(6) Did the defendant *Railway Company* fail to keep a flagman stationed upon Commercial street, at said crossing, on the night of the collision to warn all persons of the approach of the trains of the defendant *Railway Company,* contrary to the ordinance of the city of Neenah, Wisconsin? *A.* (by the court). Yes.

"(7) Was the defendant *Railway Company* guilty of want of ordinary care in failing to maintain a flagman at said crossing? *A.* Yes.

"(8) If you answer question No. 7 'Yes,' then answer this question: Was such want of ordinary care the proximate cause of the injury sustained by Al. M. Frederick and Ben Schneider? *A.* No.

"(9) Was the defendant *Railway Company's* train operated at a speed in excess of twelve miles per hour when ap-

proaching Commercial street crossing and within twenty rods thereof? *A.* Yes.

"(10) If you answer question No. 9 'Yes,' then answer this question: Was such excessive speed the proximate cause of the injuries sustained by Al. M. Frederick and Ben Schneider? *A.* No.

"(11) Did the engineer fail to exercise ordinary care in the operation of his engine as he approached the point of collision? *A.* No.

"(12) [Not answered.]

"(13) Was the defendant *Railway Company,* or any of its officers, servants, or employees, guilty of any want of ordinary care in storing or permitting the box cars to remain south of Commercial street crossing on the center track of the defendant *Railway Company* on the night of the collision? *A.* No.

"(14) [Not answered.]

"(15) What damages did Al. M. Frederick sustain? *A.* $7,425.

"(16) What damages did Ben Schneider sustain? *A.* $4,200.

"(17) Was the assignment of the claims of Frederick and Schneider to the plaintiff taken by the plaintiff for and in behalf of the defendant *Traction Company? A.* No.

"(18) Which of the following parties is the real party in interest in this action, to wit: *A. K. Ellis* or the *Wisconsin Traction, Light, Heat & Power Company? A. A. K. Ellis.*"

After verdict all the parties filed alternative motions to change the answers to certain questions in the special verdict, the motion of the defendant *Railway Company* being (1) for judgment upon the verdict and undisputed evidence; (2) for an order changing the answers to questions 7 and 9 in the special verdict from "Yes" to "No;" (3) for judgment notwithstanding the verdict; and (4) to change the answer to question 17 from "No" to "Yes" and the answer to question 18 from *"A. K. Ellis"* to *"Wisconsin Traction, Light, Heat & Power Company."*

The court changed the answer to question number 10 from

"No" to "Yes," and also changed the answer to question number 17 from "No" to "Yes."

The court further ordered that the plaintiff was not entitled to recover and that his rights were merged with those of the *Traction Company,* and ordered judgment in favor of the *Traction Company* and against the *Railway Company* for one half of the amount paid by the *Traction Company* in settlement of the two claims, which was the same amount assessed as damages in the special verdict. Judgment was entered accordingly, from which plaintiff and the defendant *Chicago & Northwestern Railway Company* appealed.

*P. H. Martin* of Green Bay, of counsel for the appellant *Ellis.*

*R. N. Van Doren* of Milwaukee, for the appellant *Chicago & Northwestern Railway Company.*

For the respondent there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke,* attorneys, and *Ralph M. Hoyt,* of counsel, all of Milwaukee, and oral argument by *James D. Shaw.*

KERWIN, J. It is established by the verdict in this case that Frederick and Schneider were injured; that the conductor of the *Traction Company* failed to discharge his duty in ascertaining whether the train of the *Railway Company* was coming over the crossing, and that such failure was a proximate cause of the injuries sustained; that the *Railway Company* failed to keep a flagman stationed at the crossing in question at the time of the collision, contrary to an ordinance of the city of Neenah, and was guilty of want of ordinary care in failing to do so, but that such want of ordinary care was not a proximate cause of the injuries; that the *Railway Company* was operating its train at a speed in excess of twelve miles per hour in approaching the crossing and within twenty rods thereof, but that such excessive speed was not a proximate cause of the injury, and that the engi-

neer did not fail to exercise ordinary care in the operation of his engine as he approached the point of collision; that the *Railway Company* or its officers, servants, or employees were not guilty of want of ordinary care in permitting box cars to remain south of Commercial street crossing on the center track of the defendant *Railway Company* at the time of the collision; that the damages sustained by Frederick were $7,425 and by Schneider $4,200; that the assignments of the claims of Frederick and Schneider were taken by the plaintiff, and that the plaintiff is the real party in interest.

The court below on motion changed the answers of the jury to the effect that the plaintiff was not the real party in interest and that the excessive rate of speed was a proximate cause of the injury.

The vital points in controversy in this case are: (1) Was *Ellis* or the *Traction Company* the real party in interest? (2) Is the finding of excessive speed supported by the evidence? (3) Was the court right in changing the answer of the jury on the question of proximate cause? (4) Was the *Traction Company* entitled to contribution?

1. Separate suits were brought by the injured parties, Frederick and Schneider, against both the *Railway Company* and *Traction Company*. The Schneider suit was tried, a verdict rendered against the *Traction Company,* and the case afterwards discontinued, a nonsuit having been granted as to the *Railway Company*. It seems that upon the trial of the case no evidence was offered regarding the negligence of the *Railway Company*. Afterwards the plaintiff, *Ellis,* purchased the claims of Frederick and Schneider, took an assignment thereof, borrowed the money from the *Traction Company* and gave his note therefor, and paid said injured parties the amount agreed upon as consideration of the purchase.

The plaintiff was a stockholder in the *Traction Company* and of course was interested in it. Undoubtedly the belief on the part of the plaintiff that the purpose of the injured

parties was to collect both claims out of the *Traction Com-
pany* and save the *Railway Company* harmless had an in-
fluence upon him in purchasing the claims. It is true, as
conceded by counsel for the *Railway Company* in his brief,
that the evidence respecting the assignment to the plaintiff is
undisputed. This evidence shows that *Ellis* purchased the
claims in his own right and at his own risk and without any
agreement or understanding that he should be indemnified in
any way by the *Traction Company* or any one else. The
evidence shows that the matter of indemnity came up and was
discussed between plaintiff and the attorney for the *Traction
Company,* and it was distinctly stated that if plaintiff pur-
chased the claims he must do so at his own risk. The trans-
action was in writing and on its face showed a *bona fide* sale
of the claims to the plaintiff and payment by him. True,
plaintiff borrowed the money from the *Traction Company*
and gave his note therefor. The evidence being undisputed
and showing a valid transaction, the only question left was
one of intention as to whether the transaction was *bona fide,*
and clearly that was a question for the jury which was re-
solved in favor of the plaintiff. *Hoff v. Hackett,* 148 Wis.
32, 34, 134 N. W. 132; *Northwestern I. Co. v. Industrial
Comm.* 154 Wis. 97, 104, 142 N. W. 271. Where conflict-
ing inferences may be drawn from the facts proved the
question is one for the jury. *Northwestern I. Co. v. Indus-
trial Comm., supra.*

The learned trial judge below seems to have labored under
the impression that because *Ellis* was interested in the *Trac-
tion Company* and because he conferred with other officers
of the company who had full knowledge of the facts that the
assignments were required for the purpose of avoiding any
question of contribution, therefore *Ellis* took the assign-
ments for the *Traction Company* and that the transfer to
him was a mere cover. We think the learned trial judge was
in error in his conclusion in this regard. The mere fact that

plaintiff was interested in the *Traction Company* and took the assignments because of such interest and with a view of aiding the *Traction Company* did not render the assignments to him void or ineffectual, if in fact he purchased the claims and took the assignments for himself and at his own risk, even although he might have believed that such purchase would eventually operate for the benefit of the *Traction Com-. pany.*

Counsel for the *Railway Company* refers to the assignment as being a mere cover and fictitious. That is a rather sweeping statement in a case like the present, where the evidence of a valid assignment is shown by undisputed evidence and the claim that it was fictitious based almost, if not wholly, upon the fact of the relations existing between plaintiff and the *Traction Company,* and when there is positive evidence, undisputed, that the assignment was taken by plaintiff for himself in his own right and at his own risk. Counsel says in looking at such transactions we must look beneath the surface. It will not do, however, in looking beneath the surface to brush aside positive, credible evidence and draw inferences contrary to the findings of the jury on such evidence.

There is no doubt but that plaintiff had a right to purchase the claims in question even though he intended to benefit the *Traction Company* by so doing. The evidence is ample to establish that he bought the claims in his own right and at his own risk, and the court below was in error in changing the answers of the jury to the seventeenth and eighteenth questions of the verdict. *Kroger v. Cumberland F. P. Co.* 145 Wis. 433, 441, 130 N. W. 513; *Habeck v. C. & N. W. R. Co.* 146 Wis. 645, 652, 132 N. W. 618; *Kersten v. Weichman,* 135 Wis. 1, 4, 114 N. W. 499; *Karlen v. Hadinger,* 147 Wis. 78, 79, 132 N. W. 591.

2. The jury found that the defendant *Railway Company* was running at an excessive rate of speed, viz. in excess of

twelve miles per hour, at the time of the collision.   The court below sustained this finding of the jury.   There is evidence on the part of the *Railway Company* that the speed limit was not exceeded, while on the part of the plaintiff there is evidence tending to show that it was.   The evidence upon this question being conflicting, under well established rules we cannot disturb the finding of the jury and the court below in this regard.

3. It is further contended by counsel for the *Railway Company* that the finding of the jury on the tenth question of the special verdict, to the effect that the excessive rate of speed was not a proximate cause of the injury, should not have been changed.

The court below found that the excessive rate of speed was a proximate cause of the injury.   Counsel for the *Railway Company* criticises this finding on the ground that there is no finding as to how much such speed exceeded twelve miles per hour.   A careful review of all the evidence shows that the excessive rate of speed was sufficient to cause the collision. It quite clearly appears that had the train been running twelve miles per hour only, the street car would have passed the zone of danger several seconds before the engine reached the point of collision and no collision would have occurred.

Upon the established facts we hold that the excessive rate of speed, in violation of law, was a proximate cause of the injury.   It having been established that the *Railway Company* was violating the law, sec. 1809, Stats., in running at an unlawful rate of speed when the collision occurred, negligence *per se* on the part of the *Railway Company* was established.   *Ludke v. Burck,* 160 Wis. 440, 152 N. W. 190; *Riggles v. Priest,* 163 Wis. 199, 157 N. W. 755.

When, as in the instant case, the unlawful rate of speed caused or contributed to the injury, proximate cause follows as matter of law.   *Allen v. Voje,* 114 Wis. 1, 89 N. W. 924.

4. The question of contribution between the *Railway Com-*

*pany* and the *Traction Company* is raised by the pleadings and discussed in this case, and while it does not seem necessary to decide it now, since we hold that plaintiff is the real party in interest, if not decided it will, doubtless, be raised and litigated later in this case.

In our view of the case judgment must go in favor of plaintiff and against the *Railway Company* and the *Traction Company* and may be collected from either, and the question arises whether the company paying the whole judgment may compel the other to contribute. There is much conflict of authority upon the subject. The question has not been settled by this court, although the principle recognizing contribution where there is no wilful or conscious wrong is recognized in former decisions of this court. *Estate of Ryan,* 157 Wis. 576, 147 N. W. 993; *North Hudson Mut. B. & L. Asso. v. Childs,* 82 Wis. 460, 52 N. W. 600.

Of course the rule is generally referred to in elementary law books and decisions of courts of last resort to the effect that there can be no contribution between joint wrongdoers, or, as some courts put it, joint tortfeasors. And a general rule is laid down to that effect. But this rule, like other rules, has its exceptions, and the authorities from the English decisions down recognize the exceptions. The logic of the rule that there can be no contribution between tortfeasors is based upon the idea that the law will not imply contribution between wrongdoers. *Merryweather v. Nixan,* 8 T. R. 186; *Adamson v. Jarvis,* 4 Bing. 66. The rule of the English cases against contribution, however, "is confined to cases where the person seeking redress must be presumed to have known that he was doing an unlawful act." Perhaps the strongest English case against contribution is *Merryweather v. Nixan, supra,* but the general rule laid down in that case was afterwards limited and explained in later cases, and it may now be regarded settled in England that there can be contribution between tortfeasors where there was no wilful

or conscious wrong. *Adamson v. Jarvis, supra; Belts v. Gibbins,* 2 Ad. & E. 57, 65; *Palmer v. Wick & P. S. S. Co. Ltd.* [1894] App. Cas. 318; *Burrows v. Rhodes,* [1899] 1 Q. B. 816.

In *Palmer v. Wick & P. S. S. Co. Ltd., supra,* where the injury was due to the negligence of two parties and judgment rendered against them, one party paid the judgment and sued for contribution. Lord HERSCHELL, in delivering the opinions of the Lords, said:

"On principle I can see no reason why, when a joint judgment debt has resulted from a joint wrong, each codebtor should not pay his share; or why, if one be compelled by the creditor to pay the whole debt, the other should be enabled to go free by setting up his own wrong. . . . It is not necessary in this appeal to decide whether there can be any right to contribution in the case of a delict proper when the liability has arisen from a conscious and therefore moral wrong, nor even whether in every case of *quasi*-delict a delinquent may obtain relief against his co-delinquent, though I see, as at present advised, no reason to differ from the opinion, which I gather my noble and learned friend Lord WATSON holds, that such a right may exist. In circumstances such as those with which your lordships have to deal, I cannot but think that equity and justice are in favor of the conclusion arrived at by the Inner House, and there seems to be no authority compelling a contrary decision. It was urged that the person seeking relief might be the more culpable of the delinquents; but it is just as likely that he should be the less culpable. In selecting from which of his codebtors he will obtain payment, the creditor would be guided usually by considerations wholly independent of the relative culpability of those from whom he may recover it.

"Much reliance was placed by the learned counsel for the appellant upon the judgment in the English case of *Merryweather v. Nixan.* The reasons to be found in Lord KENYON's judgment, so far as reported, are somewhat meager, and the statement of the facts of the case is not less so. It is now too late to question that decision in this country; but when I am asked to hold it to be part of the law of Scotland,

I am bound to say that it does not appear to me to be founded on any principle of justice or equity, or even of public policy, which justifies its extension to the jurisprudence of other countries.    There has certainly been a tendency to limit its application even in England. . . .''

Coming now to authorities in this country, it must be conceded that there is lack of harmony.    A review of all, or the larger portion, of the cases cited by counsel would serve no useful purpose.    It is sufficient to say that while the general rule is laid down in many cases and apparently without referring to the exceptions, a large number of the courts of last resort hold that where there is no wilful or conscious wrong there may be contribution between tortfeasors.

In *Jacobs v. Pollard,* 10 Cush. 287, the court referred to the general rule that it was the policy of the law to discountenance all actions in which a party seeks to enforce a demand originating in a wilful breach or violation, on his part, of the legal rights of others, and that courts will not lend their aid to those who found their claims upon illegal transactions, but further said: "It is only when a person knows or must be presumed to know that his act was unlawful that the law will refuse to aid him in seeking an indemnity or contribution."

In *Acheson v. Miller,* 2 Ohio St. 203, the court said:

"The rule that no contribution lies between trespassers, we apprehend, is not one of universal application.    We suppose it only applies to cases where persons have engaged together in doing wantonly or knowingly a wrong.    The case may happen that persons may join in performing an act which to them appears to be right and lawful, but which may turn out to be an injury to the rights of some third party who may have a right to an action of tort against them. In such case, if one of the parties has been compelled to pay the amount of the damage, is it not reasonable that those who were engaged with him in doing the injury should pay their proportion?    The common understanding and justice of humanity would say that it would be just and right that each of the parties to the transaction should pay his proportion of

the damages done by their joint act; and we see no reason why the moral sense of a court shall be shocked by such a result. And we think this view of the case is fully sustained by the cases cited by counsel for the defendant in error" (quoting *Adamson v. Jarvis, supra*). "From these and other cases referred to, we think the reasonable and common-sense rule and the legal one are the same, viz.: that when parties think they are doing a legal and proper act contribution will be had; but when the parties are conscious of doing a wrong courts will not interfere."

In 13 Corp. Jur. pp. 829, 830, §§ 18–25, the subject is treated and many authorities cited. After stating the general rule that there can be no contribution between tortfeasors, and the reason for such rule, the doctrine is stated thus:

"The general rule that there can be no contribution among wrongdoers has many exceptions. There is not complete unanimity among the decisions regarding facts which will allow or defeat the right to contribution among tortfeasors, much of the confusion being due to a failure to differentiate between the liability of tortfeasors to third persons and for contribution among themselves. It has been stated that the principle that no right of contribution exists as between wrongdoers is confined to cases where the transaction is actually illegal or void, or where the fraud is so great that on moral grounds the court will not entertain a suit for the relief of the tortfeasor, and that in cases of *quasi*-torts only, not involving any moral turpitude or any personal fault, or where the acts are not obviously unlawful, or the parties are not presumed to have known they were doing any wrong, or where their liability is by implication of law merely, then contribution will be enforced."

Many cases are collected and the general rule and exceptions stated in 6 Ruling Case Law, pp. 1054, 1055, sec. 17, thus:

"It may be said to be the general rule that one of several joint tortfeasors cannot enforce contribution or secure indemnity from any of the other tortfeasors. When parties are equally bound to bear a burden, and are *in æquali jure,* that

is, liable from the same circumstances existing as to both, contribution is due of right, in equity, but the party who would otherwise be entitled to contribution forfeits such right if the joint liability arose from an act *malum in se,* a fraud or voluntary tort, in which he participated. The rule is, *In pari delicto potior est conditio defendentis.* These general principles are, however, subject to many exceptions or limitations which confine the operation of the general rule within very narrow limits. If the parties are not equally criminal, the principal delinquent may be held responsible to his co-delinquent for damages incurred by their joint offense. In respect to offenses in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and courts will not inquire into their relative guilt. But where the offense is merely *malum prohibitum,* and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrongdoers. An exception to the general rule occurs when in the beginning the cotrespassers were not in the wrong, as when they engage in a legitimate undertaking in the pursuance of which they commit a tort unintentionally. Here if one is made to pay the damages he has an undoubted right to contribution. It has been said that the test for determining whether there shall be contribution between cotrespassers is the rule that when parties think that they are doing a legal and proper act contribution will be had; but when the parties are conscious of doing a wrong courts will not interfere. However, the true test would seem to be, Are the parties, as between themselves, wrongdoers? If they are, then they must take advantage of their own wrong in order to recover contribution; if they are not, then it is not necessary for them to allege their own wrong. Whether or not they are as between themselves wrongdoers is determined by the test whether or not they knew or must be presumed to have known that the act was wrongful, and the rule does not apply to a person made a wrongdoer by inference of law only."

In *Herr v. Barber,* 2 Mackey, 545, a joint judgment was obtained against three tortfeasors, was paid by one, and contribution sought, and while it was held that contribution in

that case could not be had, as the tort consisted in a breach of trust, the court, in discussing the question, said:

"The principle that there can be no contribution, at law, enforced by one tortfeasor against the other wrongdoers is limited by the more modern authorities to cases where the transaction out of which the judgment arises involves moral turpitude."

*Nickerson v. Wheeler,* 118 Mass. 295, is an action involving the right of contribution between tortfeasors, and the court, after referring to *Merryweather v. Nixan,* 8 T. R. 186, said:

"But although one may have been made liable in tort, he is not necessarily deprived of contribution from another also originally liable, where the foundation of the action is simply negligence on the part of each in carrying on some lawful transaction."

In *Mayberry v. N. P. R. Co.* 100 Minn. 79, 110 N. W. 356, the court said:

"There is, it is true, a general rule that the right of contribution does not exist as between joint tortfeasors; but it applies only between persons who by concert of action intentionally commit the wrong complained of."

In *Paddock-Hawley I. Co. v. Rice,* 179 Mo. 480, 78 S. W. 634, it is held that contribution may be had between tortfeasors where there was "no guilty intent in the tortious act."

In *First Nat. Bank v. Avery P. Co.* 69 Neb. 329, 95 N. W. 622, in referring to liability to contribution the court said:

"The general rule that contribution among tortfeasors will not be enforced does not apply where, as in this case, the parties acted in good faith, without any intention of committing a trespass."

The following cases also sustain the doctrine that where the element of moral turpitude is not involved and there is no wilful or conscious wrong between the parties against whom a judgment in a tort action is recovered, there may be contribution between the tortfeasors: *Nashua I. & S. Co. v.*

*W. & N. R. Co.* 62 N. H. 159; *Furbeck v. I. Gevurtz & Son,* 72 Oreg. 12, 143 Pac. 654.

Counsel for the *Railway Company* relies strongly upon *Union Stock Yards Co. v. C., B. & Q. R. Co.* 196 U. S. 217, 25 Sup. Ct. 226, while counsel for the *Traction Company* claim that this case is distinguishable from the instant case mainly on the ground that in the *Stock Yards Case* the action was for indemnity, not for contribution. The facts in that case are quite different from the facts here, but whether or not it can be distinguished from the instant case we think doubtful. If it cannot, we are not inclined to follow it, since we believe the doctrine stated in the decisions heretofore cited is the more equitable and just doctrine and well supported by authority from the English cases down. The facts out of which the injuries in the present case arose involve no moral turpitude, wilful or conscious wrong on the part of either the *Railway Company* or the *Traction Company,* and under such circumstances we think the rule allowing contribution should be followed.

It is true that in the instant case the jury found that the *Railway Company's* train was running at an unlawful rate of speed, therefore there was a technical violation of law. It is quite clear, however, from the record that the acts of the *Railway Company* in this regard were not wilful or intentional and involved no conscious wrong. The same may be said of the *Traction Company.* So it appears from the established facts that the inadvertent acts of both companies concurred in producing the injuries, hence the case is a proper one for contribution between the *Railway Company* and the *Traction Company.*

It follows, therefore, that the judgment must be reversed on both appeals, and the cause remanded with directions to the court below to enter judgment in favor of the plaintiff against the *Railway Company* and the *Traction Company* for the amount of both claims assigned to the plaintiff, and the plaintiff may collect the whole judgment from the *Rail-*

*way Company* or the *Traction Company* and cause execution to issue against either. The company which pays the judgment may have contribution from the other.

*By the Court.*—The judgment is reversed on both appeals, and the cause remanded with instructions to enter judgment in accordance with this opinion with costs in favor of plaintiff against the *Railway Company*.

VINJE, ROSENBERRY, and ESCHWEILER, JJ., dissent from that part of the decision holding that *Ellis* was a *bona fide* assignee of the causes of action. Upon the facts found by the court they concur in the doctrine of contribution.