SHAVER, Respondent, vs. DAVIS, Agent under Transportation Act of 1920, Appellant.

*October 21, 1921—January 10, 1922.*

*Railroads: Accident at grade crossing: Excessive speed of train: Look-and-listen rule: When violation is excused: Contributory negligence: Proximate cause: Questions for jury.*

1. In an action by the driver of a motor truck for injuries sustained in a collision with defendant's train at a railroad crossing, the question whether the train was moving in excess of twelve miles an hour as it approached and was within twenty rods of the crossing was for the jury.
2. One who drives a motor truck upon a railroad crossing without looking or listening and paying no attention to an approaching train is guilty of contributory negligence, in the absence of an explanation of such conduct.
3. The burden of showing such contributory negligence is ordinarily on the defendant.
4. It was the duty of the jury, in connection with all the other evidence, to consider photographs of the scene of the accident, but they are not controlling on appeal, since photographs may convey false impressions though honestly taken.
5. If a verdict is wholly unwarranted by the evidence or is the result of passion or prejudice, a new trial may be granted in the discretion of the court; but if it is one that reasonable men might find, it is not the duty of the court to disturb the decision of fact, which the law has confided to juries. If there is any credible evidence to support a verdict it cannot be dis-

turbed, and a judgment of the trial court sustaining it should not be set aside unless clearly wrong.

6. The look-and-listen rule is to be considered in connection with all the facts, and must be relaxed where the requirements of sub. 6, sec. 1809, Stats., are not complied with; and where plaintiff was unfamiliar with the existence of the crossing, the track being without fences or cattle-guards and situated in the outskirts of a city, and there was testimony that it was obscured by snow, a finding that there was no contributory negligence will not be disturbed.

7. Where the jury might have believed that there was a causal relation between the speed of the train and the extent of the injury, and that if the train had been going at a lesser rate of speed the injury would have been less serious or might not have occurred, a finding that defendant's negligence was the proximate cause of the injury will be sustained.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The appeal is from a judgment in favor of the plaintiff for $4,794.77.

. . On February 23, 1920, shortly before noon, the plaintiff, while driving an auto truck east on Grove street in the outskirts of the city of Fond du Lac, was struck at a grade crossing by a train which was "coasting" north, down grade, with the steam shut off. The day was clear and cold; a wind was blowing from the northwest; a "Look out for the cars" sign was in full view on the west side of the crossing.

.At all points within 130 feet on the west side there was an unobstructed view of the right of way to the south for several hundred feet. The track was a spur or branch; there was no line of telegraph poles along the right of way, and there were no fences or cattle-guards at the crossing. Neither was there a watchman nor any automatic guard or signal.

Within the hour preceding the accident the plaintiff went over this same crossing with a load of gravel. Returning he came to the bridge spanning the Fond du Lac river. He entered the bridge on low, shifted to second in the middle, then

into third as he left the bridge and approached the crossing a few yards ahead. The engine struck the right hind wheel, the force of the impact throwing the truck several yards down the right of way, and the plaintiff was pinned under the wreckage.

There had been a snowfall the night before. During the early morning there had been a wind strong enough to drift the snow in places. There was conflicting testimony as to the depth of snow in the road in the vicinity of the crossing, the plaintiff estimating it at eight inches. Before 8:30 at least three trains had gone over the crossing in question.

The plaintiff denied knowledge of the existence of the crossing. He had lived in the city of Fond du Lac for eight years. For three years he had been a drayman.

The complaint alleges that the plaintiff did not know of the crossing; that there were no advanced warning signs as required by statute; that, because of the inclosed cab of his truck, he could not see the "Look out for the cars" sign; that he did not see the track because it was covered with snow; and that he did not look for a train because he had no knowledge of the existence of the crossing. He further alleges that the train was being run at a negligent rate of speed far in excess of the statutory twelve miles per hour; that he heard no bell or whistle and believes that no such warning was given; and that by reason solely of the alleged negligence he had suffered the injury complained of.

The defendant took issue on all allegations of negligence.

The "Look out for the cars" sign was in full view, and if the plaintiff had looked he would have seen the train. It seems established that the whistle was blown and the bell rung at the proper places. As to the speed of the train there was conflicting evidence. The plaintiff testified that if he had looked he would have seen the train; that there was nothing to prevent his looking south to see it; that he could have looked out of the window in the cab of his truck; that he would have seen the "Look out" sign if he had looked;

that his hearing and eyesight were good; that the wind-shield was open; that he did not look either way; paid no attention to the surroundings and drove straight ahead; that he did not notice whether there was a railroad sign ahead; and that he did not hear the bell or whistle and was not listening.

The testimony of the fireman and the engineer was, in substance, that the fireman saw the truck when it was about 100 feet·from the crossing; that the fireman shouted to the engineer, who applied the brakes three or. four feet from the point of collision, the train coming to a stop within 120 feet.

In answer to the defendant's allegation of contributory negligence the plaintiff contends that, not knowing of the existence of the crossing, he was not negligent in failing to look for a train.

Plaintiff produced one witness who swore that in his judgment the train was going from twenty to thirty ·miles an hour, another twenty-five miles an hour, and another that on the following day the same train was going from twenty-five to thirty miles per hour. This last statement was made competent by the testimony of the defendant's fireman that it was being run in the same manner that day as the day before. Defendant's witnesses testified that it was being run at the rate of from eight to ten miles an hour. There was some other testimony given by both parties where less definite figures were given.

Some testimony was given in behalf of the defendant as to the distance in which a train going twenty-five or thirty miles an hour could be stopped. Plaintiff's testimony tended to show that the train stopped about 175 feet from the place of collision. There was testimony that a 700-pound wheel of the demolished truck was wedged between the pilot and the track, serving as a brake, and that the truck weighed nearly six tons and was hurled a distance of about twenty-five feet.

In a special verdict the jury found, in substance, that the train was moving in excess of twelve miles an hour as it ·

approached within twenty rods of the crossing; that the above want of care was the proximate cause of the injury; that the plaintiff used ordinary care in respect to keeping a lookout; and that the amount of the damage was $4,600.

The usual motions were made, and judgment was ordered for the plaintiff.

For the appellant there was a brief by *H. J. Killilea* of Milwaukee and *Williams & Foster* of Fond du Lac, and·oral argument by *Mr. Killilea.*

For the respondent there was a brief by *Reilly & O'Brien* and *L. J. Fellenz,* all of Fond du Lac, and oral argument by *Mr. Fellenz* and *Mr. J. E. O'Brien.*

The following opinion was filed November 15, 1921:

JONES, J.   In view of the testimony it is clear that the trial court would not have been justified in taking from the jury the question of the rate of speed of the train nor in changing their answer that the train was moving in excess of twelve miles an hour as it approached and was within twenty rods of the crossing.

Appellant's counsel rely on *Riger v. C. & N. W. R. Co.* 156 Wis. 86, 144 N. W. 204, where in the opinion of one witness, formed from imperfect observation, the rate of speed was estimated at about sixteen or seventeen miles per hour, and where five witnesses testified that the rate was from four to seven miles an hour, and where the train was stopped within thirty feet after the signal.   We do not consider the two cases at all analogous.   See *Swalm v. N. P. R. Co.* 143 Wis. 442, 128 N. W. 62.

A much more serious objection raised by appellant is that the testimony showed the contributory negligence of plaintiff.   The substance of his testimony was that he did not look nor listen and paid no attention to the approaching train.   Without any explanation his frank admission of these facts would be proof of the baldest negligence, and according to a long line of decisions of this court would defeat his action.

There are numerous circumstances relied on as an explanation, and the question is whether they sufficed to present a question for the jury. Plaintiff's evidence is undisputed that he had never crossed this spur track, which was about 1,200 feet from the western limits of the city, until the day of the accident. He had passed over the main line on Military street at a point 1,780 feet farther south at least four times on other occasions, but the track in question left the main track about thirty-seven feet north of Military street.

He knew of the three lines of railway running north through Fond du Lac and had passed over them on the forenoon of the day of the accident on his trip to the gravel pit. On this spur track, with which he said he was not familiar, there were no telegraph poles and no cattle-guards or fences.

There had been a snowfall during the preceding night of three inches or more, and with a northwest wind the snow was blowing and drifting. There was the testimony of several witnesses besides the plaintiff that at the time of the accident the track was all covered with snow and that in places off the track there were drifts three or four feet deep.

The plaintiff testified that he had much trouble managing the truck on account of the snow; that he had to raise the wind-shield three or four inches in order to see to drive; that chains were on all four of the wheels; and that in order to reach a lever and shift gears in managing the machine he had to bend over.

The train was running down grade at a speed which the jury found beyond the legal rate, with the steam shut off— hence with less than the usual noise,—and the wind was blowing from a direction opposite to that of the train.

Both parties introduced photographs in evidence and both parties rely on them. Small ones were taken by defendant's agents on the afternoon of the accident, some of which showed that the rails were plainly, and others dimly, visible. Large photographs taken two days after the accident showed very clearly that the view was unobstructed as claimed and

that at that time the rails at the crossing could be plainly seen. Plaintiff's photographs, all taken in the afternoon of the day of the injury, show the rails as scarcely visible, and the dismantled truck imbedded in deep snow-drifts. Except in one of the defendant's exhibits the drifts are not shown. It does not appear in the evidence how many trains had passed before the photographs were taken.

It is the popular impression that photographs cannot lie, but those who have had long experience in the trial of lawsuits know very well that although honestly taken and sworn to they may and often do convey very false impressions. It was the duty of the jury, in connection with all the other evidence, to consider the photographs, but they are not controlling upon us.

It has been argued with ability and earnestness by appellant's counsel that there was no credible evidence to warrant the finding of the jury which absolved plaintiff from contributory negligence, and that it is incredible that he did not know or ought not to have known that he was approaching the track of defendant. In considering whether we should set aside the order refusing a new trial there are certain rules of law which are binding upon us. It is settled by a long line of cases in this court, which it is unnecessary to cite, that the burden of proof of contributory negligence is ordinarily on the defendant. It is true that if the jury arrive at a conclusion wholly unwarranted by the evidence or which is very clearly the result of passion or prejudice, so that the court can see that justice has not been done, a new trial may be granted in the discretion of the court.

On the other hand, if the verdict arrived at is one that reasonable men might find, it is not the duty of the court to disturb the decision of fact which the law has confided to juries, not to judges. This court has repeatedly held that if there is any credible evidence to support the verdict it cannot be disturbed, and that the judgment of the trial court

sustaining the verdict should not be set aside unless clearly wrong. *Ellis v. C. & N. W. R. Co.* 167 Wis. 392, 167 N. W. 1048; *Brunner v. M., St. P. & S. S. M. R. Co.* 155 Wis. 253, 266, 143 N. W. 305, 144 N. W. 986; *Slam v. Lake Superior T. & T. R. Co.* 152 Wis. 426, 432, 140 N. W. 30; *Kroger v. Cumberland F. P. Co.* 145 Wis. 433, 443, 130 N. W. 513; *Lam Yee v. State,* 132 Wis. 527, 112 N. W. 425.

In the United States supreme court the rule has been thus stated:

"It is well settled that where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony or because, the facts being undisputed, fairminded men will honestly draw different conclusions from them." *Richmond & D. R. Co. v. Powers,* 149 U. S. 43, 13 Sup. Ct. 748; *Klotz v. Power & M. M. Co.* 136 Wis. 107, 116 N. W. 770; *Harsen v. N. P. R. Co.* 139 Wis. 186, 120 N. W. 826; *Jurkovic v. C., M. & St. P. R. Co.* 166 Wis. 266, 164 N. W. 993; *Valin v. M. & N. R. Co.* 82 Wis. 1, 5, 51 N. W. 1084.

It would probably seldom happen that a traveler would be excused for not knowing of his approach to a railroad track in broad daylight, and such ignorance would generally defeat a recovery. But the look-and-listen rule is not an unbending rule, but one to be considered in connection with all the facts. There may be ignorance of the fact that there is a railroad track at the place in question; the view may be partially obscured by trees or other objects, or entirely covered by fresh snow as indicated by testimony in this case. It cannot be said as a matter of law that any of these circumstances or all of them would excuse the person injured. Nor are we prepared to say as a matter of law that these and other similar facts are not proper subjects for the consideration of a jury. In the present case the facts that the track was a spur in the outskirts of the city, without fences or

cattle-guards; the testimony that the wind was blowing and the snow drifting; that plaintiff was busily occupied in handling a heavy truck with difficulty, were all facts fairly submitted to the jury, and they found that there was no contributory negligence, and their finding was sustained by the trial court.

In view of the decisions of this court as to the province of the jury and the effect of their decisions on questions of fact, we do not feel justified in reversing the order denying a new trial. We cite a few of the many cases which illustrate that the look-and-listen rule is not an ironclad rule subject to no exceptions or qualifications: *Valin v. M. & N. R. Co.* 82 Wis. 1, 51 N. W. 1084; *Sarles v. C., M. & St. P. R. Co.* 138 Wis. 498, 120 N. W. 232; *Kujawa v. C., M. & St. P. R. Co.* 135 Wis. 562, 116 N. W. 249; *Gordon v. Ill. Cent. R. Co.* 168 Wis. 244, 169 N. W. 570; *Winchell v. Abbot,* 77 Wis. 371, 46 N. W. 665; *Phillips v. M. & N. R. Co.* 77 Wis. 349, 46 N. W. 543; *Swalm v. N. P. R. Co.* 143 Wis. 442, 128 N. W. 62; *Wade v. C. & N. W. R. Co.* 146 Wis. 99, 130 N. W. 890.

In this connection we may refer to the statute (sub. 6, sec. 1809) which provides that a recovery for personal injury or death caused by the negligent omission of a railway company to comply with the requirements of that section shall not be barred by a slight want of ordinary care contributing to the injury or death. In considering this statute, in the opinion of Mr. Justice ESCHWEILER, it was said:

"With the legislative change as to the amount of care, lack of which will defeat an action for injury to the traveler on the highway at a railroad crossing, there must be a corresponding relaxation of the former rather rigid look-and-listen rule." *Gordon v. Ill. Cent. R. Co.* 168 Wis. 244, 169 N. W. 570.

Appellant's counsel argue that the speed of the train was not the proximate cause of the injury. In some of the cases cited by them the question of proximate cause was not properly submitted to the jury. In others it is held that the neg-

ligence of the plaintiff proximately caused the injury, and in others that in order for the plaintiff to recover he should show that the injury was the natural consequence of the act or omission of the defendant and that a person of ordinary care ought reasonably to have apprehended that personal injury to another might probably result from such negligence.

Appellant's counsel argue that if the engine had been running ten miles per hour under the circumstances in this case the accident was as likely to occur as if the train was running twenty-five miles an hour, and that it could not have been anticipated that the accident would happen.    In an opinion of the court by Mr. Justice VINJE it was said:

"It is not necessary that an ordinarily prudent man ought reasonably to have anticipated the particular injury to the plaintiff or to any particular person.    It is sufficient that such a man ought reasonably to have anticipated that his conduct might probably cause some injury to another." *Coel v. Green Bay T. Co.* 147 Wis. 229, 238, 133 N. W. 23; *Sparks v. Wis. Cent. R. Co.* 139 Wis. 108, 120 N. W. 858; *Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 103 N. W. 271; *Kujawa v. C., M. & St. P. R. Co.* 135 Wis. 562, 116 N. W. 249.

The jury may have believed that there was a causal relation between the speed of the train and the extent of the injury.    It is quite probable that if the train had been running more slowly the injury would have been less serious.   *Coel v. Green Bay T. Co., supra.*

Although the engineer might not have anticipated the specific injury to the plaintiff, it is reasonable that he should have anticipated that travelers might undertake to cross the track even though a train might be in sight; and that accidents were more likely to happen if the train was running at an illegal than at a legal rate of speed.    Under the testimony the jury may have believed that if the train had been going twelve miles an hour or less, the accident would not have happened at all.    *Ellis v. C. & N. W. R. Co.* 167 Wis. 392, 402, 167 N. W. 1048.

We are satisfied that the finding of the jury that the want of ordinary care on the part of the defendant was the proximate cause of the injury was correct.

*By the Court.*—Judgment affirmed.

ROSENBERRY, J., dissents.

A motion for a rehearing was denied, with $25 costs, on January 10, 1922.