WHITE, Respondent, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*February 27 — March 14, 1899.*

*Railroads: Injury at highway crossing: Contributory negligence.*

1. In all cases where the right of recovery is based upon negligence not wilful nor such that the person injured was deceived or misled by the negligent act complained of, the plaintiff, in order to recover, must himself have exercised care, no matter how clear the negligence of the defendant.

2. The duty of a person approaching a railway track to look and listen before crossing is absolute, and nonobservance of that duty is negligence *per se.* So *held*, in a case where the gates maintained at a railway crossing were open, and plaintiff, while walking across the tracks, was struck by a train running at an unlawful rate of speed, which he might have seen and heard if he had looked and listened before attempting to cross. *Rohde v. C. & N. W. R. Co.* 86 Wis. 309, distinguished.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

Action for personal injury. Defendant operates its railway through the city of Neenah, and across Commercial street. The railroad tracks run north and south, and Commercial street in a northeasterly and southwesterly direction, and at the point of intersection the northeast angle is 43° 50'. The street is crossed by four tracks, the main track being to the west. Next easterly is the passing track, the distance from center to center, perpendicularly, being about

thirteen feet, from rail to rail about eight feet, and along the sidewalk about twelve feet.  Still further east, in succession, are what are known as the storage and warehouse tracks.  From the center of the main track to the center of the storage track, along Commercial street, the distance is a little more than twenty-one and one-half feet, and to the center of the warehouse track ninety-nine feet.  Defendant's depot is immediately north of Commercial street, and west of the main track, and consists of a baggage room, depot, and express room, under one roof.  The distance from the north side of the north sidewalk at the main track up the track to a point opposite the southeast corner of the baggage room is 132 feet 6 inches, and opposite the same corner of the depot, 192 feet 6 inches.  Gates were maintained by the defendant at this crossing, and were operated from 7 o'clock in the forenoon until the passing of the trains which met there and were due at 7:37 in the evening.

Plaintiff was injured about 8:30 in the evening of February 9, 1897.  He lived in Neenah.  He spent the early part of the evening in Menasha, and was returning home, walking on the north sidewalk of Commercial street towards the west.  While passing over the main track, he was run into by one of defendant's freight trains, and severely injured. The negligence of defendant concerning which proof was offered consisted in failure to operate the gates, blocking of the sidewalk by cars left on the tracks east of the main track, and running its train at a dangerous rate of speed over the crossing, without signal or warning.  Defendant admitted that the gates were not operated, but denied the other allegations of negligence.

The jury found by a special verdict that the defendant was guilty of negligence which was the proximate cause of plaintiff's injury; that the plaintiff was without fault; that the bell of the locomotive was ringing continuously as the train approached and passed over the crossing; that the speed of

White vs. The Chicago & Northwestern R. Co.

the train was eighteen miles per hour,— and assessed the plaintiff's damages at $5,500. The court refused to direct a verdict for defendant, and refused to set aside the verdict rendered, but ordered judgment for the plaintiff. From the judgment so entered this appeal is taken.

For the appellant there was a brief by *Fish, Cary, Upham & Black*, and oral argument by *John T. Fish*.

For the respondent there was a brief by *Eaton & Weed* and *Henry Fitzgibbon*, and oral argument by *H. I. Weed*. To the point that the open gates were notice of a clear track and that it was safe to cross without taking the precautions usually required to discover approaching trains, and that negligence is not imputed to one who acts upon that assurance, they cited *Hooper v. B. & M. R. R.* 81 Me. 260; *Glushing v. Sharp*, 96 N. Y. 676; *Ernst v. H. R. R. Co.* 35 N. Y. 9; *Lindeman v. N. Y. C. & H. R. R. Co.* 42 Hun, 306; *Palmer v. N. Y. C. & H. R. R. Co.* 112 N. Y. 234; *Tyler v. N. Y. & N. E. R. Co.* 137 Mass. 238; *Pennsylvania R. Co. v. Matthews*, 36 N. J. Law, 533; *Lake Shore & M. S. R. Co. v. Frantz*, 127 Pa. St. 297; *Railway Co. v. Schneider*, 45 Ohio St. 678; *Richmond v. C. & W. M. R. Co.* 87 Mich. 374; *Evans v. L. S. & M. S. R. Co.* 88 Mich. 442; *Pennsylvania Co. v. Stegemeier*, 118 Ind. 305; *Pittsburgh, C. & St. L. R. Co. v. Yundt*, 78 Ind. 373; *Chicago, St. L. & P. R. Co. v. Hutchinson*, 120 Ill. 587; *Central P. R. Co. v. Kuhn*, 86 Ky. 578; *Abbett v. C., M. & St. P. R. Co.* 30 Minn. 482; *Central Trust Co. v. W., St. L. & P. R. Co.* 27 Fed. Rep. 159; *Burns v. North Chicago R. M. Co.* 65 Wis. 312; *Rohde v. C. & N. W. R. Co.* 86 Wis. 309.

BARDEEN, J.   We are urged to reverse this judgment on the ground that the plaintiff's evidence, with the finding of the jury, shows that he was guilty of negligence that will preclude a recovery.   The same contention was addressed to the trial judge, and denied on grounds hereinafter referred

to.   It is admitted that proper gates were maintained at the crossing where plaintiff was injured, and that they were not operated at the time of the injury.   It must also be assumed that the several tracks referred to in the statement of facts were incumbered with cars, the car on the passing track being close to or partly over the sidewalk on the north side of Commercial street, and that, as the jury has found, defendant's train approached the crossing at the rate of eighteen miles per hour.   It must also be assumed that the headlight in defendant's locomotive was lighted; that the bell was rung continuously as the train approached the crossing; and that the measurements as stated are substantially correct. The plaintiff was a man about fifty-five years of age, possessed of all his faculties.   He had lived within a few hundred feet of this crossing for a year and a half, and was somewhat familiar with the surroundings and conditions.   He approached the crossing on foot from the east.   We will give the circumstances of the accident in his own language:

"When I approached the tracks, I see the gates were up, and cars standing on the side track, warehouse track, and I walked on, looking both ways.   I supposed everything was clear, and I walked on and looked both ways, and I see nothing and heard nothing, and when I got to the main track I stopped and looked around the corner north towards the depot.   I looked north around the edge of the car.   I didn't walk around the car.   I stood and looked north, and could see down as far as the depot, one corner of it, and moved up and looked south; and I took three or four steps, and my foot slipped, and I was struck.   When I stopped at the corner of the car, I looked for approaching trains, but didn't see a train coming nor hear the bell of an engine rung."

This was about half past eight in the evening of February 9th.   The headlight of the locomotive was burning, and the jury found that the bell was ringing.   The moment he passed the car on the passing track, if there was a car at that point,

the view north for 1,600 feet was clear and unobstructed. If the train was near enough to strike him, as he said it did, it must have been in plain sight. There can be no gainsay-irg this fact. It is fixed by the uncontroverted testimony. The wind was blowing southeast, and would naturally carry the noise of the approaching train and the sound of the ring-ing bell somewhat in his direction. There was nothing to distract his attention or prevent him using his senses. He says he looked but saw no train and heard no bell. One of two conclusions is certain,— either that he did not look and listen, or, if he did look and listen, he did not heed what he saw and heard. The law presumes that he saw what he could have seen if he had looked, and heard what he could have heard if he had listened. *Cawley v. La Crosse City R. Co.* 101 Wis. 145. The presumption being that he saw and heard the approaching train while standing at a place where he was in perfect safety, the fact that he got on the track and was injured leads to the conclusion that he was heedless and careless. The duty to look and listen is absolute, and nonobservance of that duty is negligence *per se.* This is the rule of all of the authorities, many of which are cited in the opinion before referred to. No less certain and absolute is the duty to observe and heed the danger that is in sight. To a person approaching a railroad track on foot, the dan-ger line is so narrow, and may be avoided with so little effort, that the law justly thrusts the obligation of exercising that effort upon him. If he fails to use common prudence, and is injured, he is without remedy. *Bohan v. M., L. S. & W. R. Co.* 61 Wis. 391; *Hansen v. C., M. & St. P. R. Co.* 83 Wis. 631; *Schmolze v. C., M. & St. P. R. Co.* 83 Wis. 659; *Schlim-gen v. C., M. & St. P. R. Co.* 90 Wis. 186; *Nolan v. M., L. S. & W. R. Co.* 91 Wis. 16; *McCadden v. Abbot,* 92 Wis. 551.

In a written opinion denying the defendant's motion for a new trial, the trial judge laid much stress on the case of *Rohde v. C. & N. W. R. Co.* 86 Wis. 309, wherein it was said: "The open gate was an assurance to the public that there

was no danger, and an invitation to cross in safety." This was said in a case where the gates were not lowered, and plaintiff, relying thereon, drove his team in such proximity to the track that they became frightened by a passing train, and ran away. But suppose, while in a place of safety, plaintiff in that case had seen, or could have seen by the use of ordinary care, that the train was approaching, would any one claim that he might nevertheless continue his way and drive into danger? The paramount duty of the traveler is to use ordinary care, and this obligation is none the less absolute even though the other party is guilty of negligence. It is only when the traveler is lulled into security in reliance upon the negligent act, and is drawn into danger that he could not avoid by the exercise of ordinary care, that the obligation to respond in damages exists. The current of authorities in support of this rule is well-nigh universal. An extensive discussion and citation of authorities may be found in 3 Elliott, R. R. §§ 1165, 1166. Thus, in *Moore v. K. & W. R. Co.* 89 Iowa, 223, it is stated: "A traveler upon a highway, when approaching a railroad crossing, ought to make a vigilant use of his senses of sight and hearing in order to avoid a collision. This precaution is dictated by common prudence. He should listen for signals, and look in the different directions from which a train may come. If, by neglect of his duty, he suffers injury from a passing train, he cannot recover of the company, although it may itself be chargeable with negligence, or have failed to give the signals required by statute, or be running at the time at a speed exceeding the usual rate." It was further said, in substance, that although deceased had the right to act on the presumption that the usual warning signals for crossings would be given, yet he must use ordinary care to avoid danger; and, having had an opportunity to see the train and avoid the danger, no recovery could be had.

Upon the same subject, we quote from *Cadwallader v. L., N. A. & C. R. Co.* 128 Ind. 518: "Assuming in this case

that the appellant had the right to presume that no train was approaching, by reason of the failure of the flagman to give notice, yet this did not excuse her from the use of her senses of sight and hearing in order to ascertain the fact for herself.   With the use of these senses she was as well able to ascertain whether a train was approaching .as the flagman at the crossing, and a failure to use them was negligence."

In *Korrady v. L. S. & M. S. R. Co.* 131 Ind. 261, it is said: " It does not excuse one who attempts to cross in front of a locomotive which he sees approaching at no great distance that the speed is eighteen miles an hour at a place where a municipal ordinance limits it to ten miles an hour.  The law is well settled that, where a train is seen approaching, it is .contributory negligence to voluntarily attempt to cross the track upon the assumption that the speed is not greater than a municipal ordinance allows."   An extract from the opinion in the case of *Railroad Co. v. Houston*, 95 U. S. 697, is as follows: " But, aside from this fact, the failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety.  Negligence of the company's employees in these particulars was no excuse for negligence on her part.  She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into a place of possible danger.  Had she used her senses she could not have failed both to hear and to see the train which was coming.  If she omitted to use them and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others."

In *Berry v. Pennsylvania R. Co.* 48 N. J. Law, 141, the statement is made that the negligence of a flagman at a crossing will not excuse the traveler who attempts to cross

the track of a railroad from looking both ways and listening. He must not rely entirely upon the flagman. Chief Justice Paxson lays down the rule in *Greenwood v. P., W, & B. R. Co.* 124 Pa. St. 572, as follows: "I do not understand the law to be that when a railroad company adopts safety gates or any other appliance for the protection of the public, that the public are thereby absolved from the duty of taking care of themselves. Conceding that the company was required to take extra precautions 'by reason of the gates being out of order, yet the plaintiff was also bound to do his part. He had no right to omit the ordinary precautions when approaching a railroad crossing merely because he finds the gates up. . . . In all such cases the safety of the traveling public requires that each party shall be held to the exercise of due care."

These are but a few of the cases holding substantially the same doctrine, and it is not, as asserted by the trial judge, peculiar to the state of Pennsylvania. The true rule, and the one we wish to be understood as sanctioning, is as laid down by 3 Elliott, R. R. § 1165: "In all cases where the right of recovery is based upon negligence, the rule supported by authority is that, in order to recover, the plaintiff must himself exercise care, and is not absolved from this duty, no matter how clear the negligence of the defendant." This rule, of course, does not apply to cases when the acts or conduct of the defendant are such as may justly be regarded as wilful, nor to its full extent to cases when the plaintiff is deceived or misled by the negligent act complained of. The plaintiff in this case cannot justly claim that he was led into a place of danger by the failure of the company to lower the gates. The noise of the train and the ringing of the bell were sufficient to apprise him of its approach. If he had used his eyes at all, he could have seen the train before he was struck. Failing to do so, his right to claim damages for his injury never ripened. He is the victim of

his own carelessness. *Freeman v. D., S. S. & A. R. Co.* 74 Mich. 86; *Gardner v. D., L. & N. R. Co.* 97 Mich. 240; *Clark v. N. P. R. Co.* 47 Minn. 380.

This view of the case renders it unnecessary to discuss the objections to the special verdict or the criticisms made to the charge.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.