HAINS, Administrator, Respondent, vs. JOHNSON, Receiver, Appellant.

*October 10—October 28, 1913.*

*Railroads: Killing of traveler at highway crossing: Omission of customary signals: Contributory negligence: Failure to look.*

1. The omission of the customary signals of an approaching car will not alone excuse a traveler upon the highway from the duty to approach a railway crossing carefully and to look with such care as to see what can be plainly seen.

2. Plaintiff's intestate, while riding in a buggy, was killed at a highway crossing in a collision with a south-bound car upon a double-tracked interurban electric railway.   It appearing that after the vehicle going west had reached a point forty-one feet from the tracks the view was unobstructed, and that if the driver had looked carefully to the north he would have seen the car in time to avoid the collision, it is *held* that the failure so to look was a want of ordinary care, imputable to the deceased and precluding a recovery, although it was necessary for the driver to look to the south also and although the warning bell at the crossing was not ringing and he knew that a car from the north had passed but a short time before.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge.   *Reversed.*

For the appellant there was a brief by *Fisher & Fisher,* at-
torneys, and *Bull & Johnson,* of counsel, and oral argument
by *Peter Fisher.*

For the respondent the cause was submitted on the brief
of *Robert Verne Baker.*

TIMLIN, J.   The appellant is operating as receiver the in-
terurban railway of the Chicago & Milwaukee Electric Rail-
road Company, and the plaintiff's decedent, Mrs. Mary
Yurik, while riding with two others was killed in a collision
at a highway crossing of said railway on July 14, 1912.   The
jury found by special verdict that the appellant was negligent
in the operation of the car which collided with the vehicle in
question and this negligence caused the death of Mrs. Yurik.
This vehicle was what is known as a top buggy without side
curtains.   It was drawn by a quiet, manageable horse, and it
was occupied at the time of the accident by the deceased and
another lady sitting in the single seat, with a driver, one Alex-
ander Mikulick, sitting on their knees.   The right of way at
the crossing is 100 feet wide; the street is sixty-four feet wide.
The highway runs east and west, the railway north and south,
and there are two railway tracks, one to the west for south-
bound cars and one to the east for north-bound cars.   From
the east line of the right of way to the nearest rail on the east
or north-bound track is forty-one feet, and this distance plus
the width of the east track plus the distance between the
tracks brings the traveler to the place of the collision.   Mi-
kulick was driving west on this street.   There is evidence
from which the jury might infer that when one is approaching
this crossing from the east his view to the north is obstructed
until he enters upon the right of way.   But from thence his
view is clear and unobstructed.   Approaching the right of
way his view to the south is also somewhat similarly ob-
structed.   This is no doubt a dangerous grade crossing con-

sidering the speed with which the interurban cars are oper-
ated. No question is made but that the contributory negli-
gence of Mikulick, if any, is imputable to deceased. Mikulick
testified that while approaching the right of way he saw a
south-bound car cross the street and that an electric bell which
usually rang when cars were coming near the crossing was not
ringing at the time in question. While on the right of way
and approaching the track he first looked to the north along
the track and then to the south and did not see anything, and
drove along until the instant before the collision, when he saw
the car for the first time. He was going on "a kind of a
small trot."

Numerous precedents in this state establish a rule of dili-
gence to be observed by travelers on a highway approaching a
grade crossing of a railroad. There are here no disputed
facts relative to the care exercised by Mikulick. The rules
of duty imposed upon travelers approaching a grade crossing
with the cases upon which they are founded are collected in
*White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N.
W. 148.

Under the rule of *Rohde v. C. & N. W. R. Co.* 86 Wis.
309, 56 N. W. 872, it might be said that the silent bell was
an assurance that there was no danger and an invitation to
cross in safety. But in *White v. C. & N. W. R. Co.* 102
Wis. 489, 78 N. W. 585, BARDEEN, J., commenting on the
former case, said:

"Suppose, while in a place of safety, plaintiff in that case
had seen, or could have seen by the use of ordinary care, that
the train was approaching, would any one claim that he
might nevertheless continue his way and drive into danger?"

It may be noticed that this is not the precise question pre-
sented here. The question here, rather, is whether within the
rules of diligence, or rather the rules defining ordinary care
under similar circumstances, the driver might, by reason of
the silence of the bell, the short distance, the necessity of

looking south, and his knowledge that a car coming from the north had passed the crossing a short time before, be excused from failing to look north in time or to look with that care and diligence with which he otherwise should have looked.

In *White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141 (133 N. W. 148), at page 150 it is said, discussing the question of contributory negligence:

"Even such a persuasive circumstance as gates being raised where such exist and are customarily let down to bar the way to the track when a train is about to pass, has been held not to excuse a traveler on foot from using, efficiently, his own faculties to discern whether the track is clear before entering upon it," citing the *White Case,* 102 Wis. 489, 78 N. W. 585, and *Walters v. C., M. & St. P. R. Co.* 104 Wis. 251, 80 N. W. 451.

. The open gate is a more persuasive invitation than the silent bell. The distance was short and the plaintiff did look in each direction, but apparently his glance to the north was so hasty and slight as not to inform him of the approach of the car and he continued on a slow trot to the place of collision.

Personally I would have no hesitation, were this a new question, in deciding that under such circumstances the question of contributory negligence was for the jury. But this is not the unanimous view of the court. However, this case seems to be ruled by the later cases in this court against the plaintiff, on the ground that the omission of the customary signals of an approaching car will not alone excuse the traveler approaching the track from the duty to approach carefully and look with such care as to see what can be plainly seen. Had he looked carefully to the north he would have seen the car approaching. It follows that the judgment must be reversed, with directions to dismiss the complaint.

*By the Court.*—Judgment reversed, and the cause remanded with directions to dismiss the complaint.