MERRILL, Respondent, vs. CHICAGO, NORTH SHORE & MIL-
WAUKEE RAILROAD, Appellant.

*April 9—May 4, 1920.*

*Street railways: Track crossing public street: Ordinance govern-
ing speed of interurban cars upon streets: Application: Colli-
sion with automobile: Contributory negligence.*

1. The track of an interurban electric railroad crossing a city
   street is maintained "upon" such street within the meaning of
   a city ordinance to the effect that no motorman in charge of
   an interurban car propelled by electricity shall operate any
   such car "upon or along any railroad track laid and main-
   tained on any public street" at a greater rate of speed than
   fifteen miles per hour.
2. In an action against an interurban electric railroad for dam-
   ages sustained when one of its cars collided with an auto-
   mobile at a place where the tracks crossed a city street, the
   question of whether the driver was guilty of contributory
   negligence is for the jury.

APPEAL from a judgment of the circuit court for Kenosha
county: E. T. FAIRCHILD, Judge. *Affirmed.*

Personal injury. December 23, 1917, the wife of the
plaintiff, aged thirty-nine years, was riding in a Ford auto-
mobile driven by her son, Leland Merrill, at that time seven-
teen years of age. They were going from plaintiff's farm
to Kenosha, and in so doing passed over the double tracks
of the defendant company, which run north and south, the
crossing being made on Avery street, which runs east and
west. West of the company's tracks, and parallel thereto,
is Superior street. From the intersection of Superior and
Avery streets to the track is 214 feet. On the south side
of Avery street and between Superior street and the tracks
there are buildings which partially obstruct the view of a
traveler upon Avery street approaching the tracks from the
west, although a traveler so approaching the tracks is able
to see portions thereof. The morning in question was
misty, the driver of the car knew he was approaching the
tracks of the defendant, and at the east side of Superior

street looked south to ascertain whether a car was approaching from that direction. At that point he was able to see about 100 feet of the tracks of the defendant at a point about 500 feet south of the Avery-street crossing. . As he passed to the east his view was obstructed by the freight depot and a building described as the Italian Bakery, located on the rear of a lot fronting on Superior street. As he approached the tracks he looked to the north to see if there was an approaching car on the west or south-bound track. West of the south-bound track there was a sidetrack, on which at the time were standing two freight cars. The cars were near the south line of Avery street. As he came opposite the freight cars he reached over the steering wheel and looked as far to the south as he could, and listened to ascertain whether or not any car was approaching on the east or north-bound track from the south. The distance between the north- and the south-bound tracks is thirteen feet. He reduced his speed slightly, and when within about twelve feet of the east-bound track he discovered a car approaching him, and the driver remembers nothing further until he regained consciousness in the hospital.

The street car struck the automobile and carried it north of the crossing a distance of 219 feet. The driver was thrown a distance of seventy-seven feet north of the center of Avery street. Maude Merrill, the wife of the plaintiff, was instantly killed, and this action is brought to recover damages caused by her death and for injury to the automobile.

The issues were submitted to the jury on a special verdict. The jury found (1) that in approaching the Avery-street crossing the whistle was not blown; (2) that the failure to blow the whistle was a proximate cause of the accident; (3) that the street car was traveling at a speed of more than fifteen miles per hour as it approached the crossing; (4) that such speed was a proximate cause of the accident; (5) that the motorman failed to exercise ordinary care in operating

the car just prior to the collision; (6) that such failure to exercise ordinary care was a proximate cause of the collision; (7) that the driver was not guilty of any want of ordinary care which contributed to the injury; (8) assessed plaintiff's damages at $7,291.88.

There were the usual motions. Defendant's motions were denied, and the plaintiff had judgment for the amount of the verdict, from which judgment the defendant appeals.

For the appellant there was a brief by *Fisher & Fisher* of Kenosha, attorneys, and *John B. Simmons* of Racine, of counsel, and oral argument by *Mr. G. T. Hellmuth* of Chicago and *Mr. Simmons.*

*Robert V. Baker* and *Frank S. Symmonds,* both of Kenosha, for the respondent.

ROSENBERRY, J.    It will be noted that question 3 of the special verdict inquired whether or not the street car was traveling at a greater rate of speed than fifteen miles per hour as it approached Avery street. This question was framed with reference to an ordinance of the city of Kenosha, the material provisions of which are as follows:

"No motorman . . . in charge of an interurban car . . . propelled by electricity, shall run, drive, propel, or operate any such car upon or along any railroad track laid and maintained on any public street . . . at a greater rate of speed than fifteen miles per hour."

The court correctly construed this ordinance as applying to Avery street, although the tracks of the defendant ran across Avery street and not within and parallel with it. *People's R. T. Co. v. Dash,* 57 Hun, 587, affirmed 125 N. Y. 93, 26 N. E. 25, 10 L. R. A. 728. There is abundant evidence to sustain the answer of the jury to the third question. The negligence of the defendant company, therefore, must be regarded as fully established.

The serious question in the case is whether or not the driver of the automobile in which the deceased was riding

was guilty of a want of ordinary care at the time and place of the accident.

The driver of the automobile was in the possession of all his faculties and had good hearing and eye-sight. The car in which he was driving could be easily stopped. The street was even with the tracks of the company and had a width of fifty feet. The day was warm and, although there was a slight mist, objects could be readily seen. It was eighteen feet from the west rail of the west track to the east rail of the switch track upon which the two freight cars were standing. The driver testified as follows:

"I looked to see if a car was coming. The windshield was down and I reached up, looking over. I was then right opposite the switch track, going about eight miles an hour. After leaving the switch track I looked north, first to see if I could see a car coming. Then I did look south, but the car was right on me. When I was opposite the switch track I looked south. I don't know how far I could see. Not as far as Salem avenue" (the next street to the south parallel with Avery street).

On behalf of the defendant it is argued strenuously and with much force that had the driver looked at the proper places he must have seen the approaching car. We are not dealing with a situation in this case where the driver did not look and listen, but with a case where he did look and listen but failed to detect the approach of the car by reason of obstructions to his view. There is evidence from which the jury might have found that the car was approaching the crossing at a very high rate of speed. We cannot set out in detail all of the facts bearing upon the question of contributory negligence. While the case is not free from difficulty, we have, after a careful examination of the record, concluded that upon all the facts a jury question was presented. No doubt the evidence would have sustained a verdict finding the driver guilty of contributory negligence. We recognize the established rule covering the

conduct of persons approaching a railroad crossing. We think this case is ruled by the principles laid down in *Dahinden v. Milwaukee E. R. & L. Co.* 169 Wis. 1, 171 N. W. 699, rather than by *White v. C. & N. W. R. Co.* 102 Wis. 489, 78 N. W. 585.

*By the Court.*—Judgment affirmed.