GUNDLACH, Appellant, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY and THE DIRECTOR GENERAL OF RAILROADS, Respondents.

*September 23—October 19, 1920.*

*Railroads: Accident at crossing: Clear signal and absence of flagman: Contributory negligence: Question for jury.*

1. An instruction as to the contributory negligence of the driver of a wagon, injured at a railroad crossing, that if the circumstances when he approached the crossing were such as to lead the jury to find that he might well have believed that they gave him an affirmative assurance of safety, it was a circumstance to be considered with all other facts in determining whether he exercised the degree of care ordinarily exercised under the same circumstances, but that he was not excused, because of anything in the circumstances surrounding the crossing, from exercising ordinary care to ascertain whether the track was clear,—is correct.

2. In an action for injuries to such driver, whose view of the crossing was obstructed and who relied on the fact that the stop signal was in the place where it customarily was when not in use and upon the further fact that the flagman was not present, the question of the contributory negligence of the driver was for the jury.

3. It is a matter of common knowledge and experience that travelers, approaching a railroad crossing at a time when gates or flagmen are ordinarily maintained there, consider the fact of their presence or absence in determining their course of conduct.

4. Where recovery in an action against a railway company and the federal director general of railroads was for injuries plaintiff suffered while the railway was under federal control, plaintiff's judgment claim is one to be settled and paid pursuant to the provisions of the Transportation Act of 1920 (41 U. S. Stats. at Large, 456, ch. 91), and the agent designated by the President under that act is substituted as defendant in place of the railway company and the federal director general on the motion of the railway company.

Gundlach v. Chicago & N. W. R. Co. 172 Wis. 438.

APPEAL from a judgment of the circuit court for Dane county! E. RAY STEVENS, Circuit Judge. *Reversed.*

Personal injury. First street, in the city of Madison, extends north and south and crosses the defendant railway company's tracks at a right angle. On each side of the railway the street is paved with concrete to a width of twenty-six feet. There is a slight decline in the highway as it approaches the railway track from the south. On the west side of First street and south of the tracks is a warehouse seventy-eight and one-half feet long east and west, thirty-two and three-tenths wide north and south. The northwest corner of the warehouse is a little over twenty feet from the nearest rail of the main track. There is a spur track between the warehouse and the main line which terminates at the east end of the warehouse. The main track running to the west is practically straight for a distance of 1,500 feet. At the time in question an engine, with the bell ringing, was backing from the yards easterly, traveling at a speed of twelve miles per hour as found by the jury. The collision occurred at 8:15 a. m. on a clear day with the sun shining. The plaintiff was driving a gentle team of horses hitched to a milk wagon and standing on holding on to the east side of the wagon as it proceeded northerly toward the railroad track. As the plaintiff approached the railway track he looked to the west between the south side of the warehouse and adjacent building to see if any train was approaching from the west. He saw nothing. His team continued on toward the railroad track, coming down the slight decline unchecked. He then turned his attention to the east, where his view was partially obstructed, and endeavored to ascertain if any train was coming from the east. When 100 feet from the crossing he observed that the flagman, who at that time of day was usually and ordinarily at the crossing to warn travelers on the highway of approaching trains, was not in the position he took to give such warning; that the stop sign was in the place usually occupied by it when not in use by

the flagman. He then looked to the west and discovered the engine almost upon him and endeavored to cross the track, and the rear end of the wagon was struck by the engine, thrown around and demolished, and the plaintiff sustained severe injuries.

This action is brought to recover damages sustained by the plaintiff to his person and property. There was a special verdict. The jury found, first, that the engine while approaching the crossing and within twenty rods of the street where the collision occurred was traveling at the rate of twelve miles per hour; second, that the injury to the plaintiff was not the natural and probable result of the conduct of those in charge of the engine; third, that those in charge of the engine, acting as persons of ordinary intelligence and prudence, ought not to have foreseen that an injury to a traveler would probably occur as the result of their conduct; fourth, that those in charge of the engine, at and just prior to the time the engine struck the wagon, failed to exercise ordinary care; fifth, that the damage sustained was the natural and probable result of such want of care of those in charge of the engine; sixth, that those in charge of the engine, in the exercise of ordinary care, should have foreseen that an injury to a traveler might probably result from their conduct; seventh, that the plaintiff did not fail to exercise ordinary care. Damages for injury to the person were assessed at $4,700 and for injury to the property at $500. Other questions were answered which are not material on this appeal. The defendants moved for a new trial and to set aside the verdict, and the trial court held the plaintiff guilty of contributory negligence as a matter of law, changed the answers to questions 7, 8, 9, and 10 in accordance with such finding, and upon the verdict so amended defendants had judgment, from which the plaintiff appeals.

For the appellant there was a brief by *Crownhart & Wylie* of Madison, and oral argument by *Fred M. Wylie*.

*R. N. Van Doren* of Milwaukee, for the respondents.

ROSENBERRY, J.   Upon this appeal the negligence of the
defendants is conceded.   This renders unnecessary a deter-
mination as to whether or not the defendants were guilty of
negligence in failing to maintain a flagman at this point and
we will not discuss that question.

The principal question presented here is, Did the trial
court err in holding that the plaintiff was guilty of con-
tributory negligence as a matter of law and in setting aside
the finding of the jury upon that question?   In submitting
to the jury the question of whether or not the plaintiff was
guilty of contributory negligence, the trial court correctly
instructed the jury as follows:

"If the circumstances surrounding the crossing when *Mr.
Gundlach* [plaintiff] approached this crossing were such as
to lead you to find that *Mr. Gundlach* might well believe
that those circumstances gave him an affirmative assurance
of safety, that is a circumstance to be considered by you in
connection with all the other facts and circumstances in the
case in determining whether *Mr. Gundlach* exercised the
degree of care which the great mass of mankind of like age,
experience, and intelligence ordinarily exercise under the
same or similar circumstances; but you must keep in mind
the fact that nothing in the circumstances surrounding this
crossing at the time *Mr. Gundlach* approached the crossing
will excuse him from exercising ordinary care in using his
senses of sight and hearing in order to ascertain for himself
whether the track was clear before entering upon it."

On behalf of the defendants it is argued that because it
appears from the evidence that when the plaintiff was
thirty-five feet from the crossing he could see down the
track to the west 111 feet (looking by the north side of the
warehouse at the very first opportunity), and when thirty
feet from the crossing he could see 164 feet to the west, the
jury having fixed the speed of the engine at twelve miles per
hour with the plaintiff's team traveling four miles per hour,
that when the plaintiff was thirty feet from the track the
engine must have been 130 feet from the crossing and there-
fore in plain view of the plaintiff at that point, that he did

not look to the west at that point, and that he was therefore not in the exercise of ordinary care and did not use his senses of sight and hearing, and that to disturb the holding of the trial court that the plaintiff was guilty of contributory negligence as a matter of law would overrule a long line of Wisconsin cases, citing *White v. C. & N. W. R. Co.* 102 Wis. 489, 78 N. W. 585; *White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N. W. 148; *Brown v. C. & N. W. R. Co.* 109 Wis. 384, 85 N. W. 271; *Jacky v. McAdoo, ante,* p. 262, 177 N. W. 885; *Hains v. Johnson,* 154 Wis. 648, 143 N. W. 653; and other cases. In *White v. C. & N. W. R. Co.* it appears that a foot passenger upon the highway approached a crossing at which gates were ordinarily maintained, that there was nothing to distract his attention or prevent him from using his senses, and he testified that he looked but saw no train and heard no bell when at a point within a zone of safety, it appearing conclusively that had he looked or listened he would have seen the engine or heard the bell, and his failure to do so was held to be heedless and reckless conduct. It is there said: "The duty to look and listen is absolute, and nonobservance of that duty is negligence *per se*." The case of *Rohde v. C. & N. W. R. Co.* 86 Wis. 309, 56 N. W. 872, wherein it is said, "the open gate was an assurance to the public that there was no danger, and an invitation to cross in safety," was commented upon, and it was said:

"The paramount duty of the traveler is to use ordinary care, and this obligation is none the less absolute even though the other party is guilty of negligence. It is only when the traveler is lulled into security in reliance upon the negligent act, and is drawn into danger that he could not avoid by the exercise of ordinary care, that the obligation to respond in damages exists."

We are not disposed to depart from the rule established by these cases. Travelers in approaching a highway do not act with mathematical precision and are held to no higher

degree of care than that exercised by the great mass of mankind under the same or similar circumstances. While the plaintiff in this case might not rely upon the fact that the warning sign was in the customary place when it was not in use, and upon the further fact that the flagman was not present, as an absolute assurance of safety and proceed without regard to his own safety, such circumstances are nevertheless factors to be considered in determining whether or not the plaintiff was at the time in the exercise of ordinary care. He looked before he passed the south side of the warehouse, and had the approaching engine been of the ordinary length of a train he undoubtedly would have seen it. When 100 feet from the crossing he saw that the flagman was absent and the signal in place and the crossing exactly as it ordinarily was when no train was approaching. He then turned his attention to the east, trains being as likely to come from the east as from the west. His view being obstructed, he satisfied himself no train was approaching from the east, and then again looked to the west but too late to avoid the collision. While a man may not rely upon reason, and fail to exercise his senses of sight and hearing in the presence of a known danger, yet, in determining whether or not he is guilty of a want of ordinary care, all the circumstances must be considered. This is not the case of a traveler approaching a railway crossing without exercising any care or in a heedless and careless manner. The evidence establishes the fact that he was in the exercise of some degree of care, and we are of the opinion that it is a question for the jury to determine whether or not, in the face of all the circumstances, including the fact that the gateman was not in sight, that the signal was in place where it customarily was when not in use, the conduct of the plaintiff in approaching the crossing constituted the use of such care as is ordinarily exercised by the great mass of mankind under like circumstances. *Derr v. C., M. & St. P. R. Co.* 163 Wis. 234, 157 N. W. 753. We are of the opinion that this rule

Gundlach v. Chicago & N. W. R. Co. 172 Wis. 438.

does not modify the rule announced in *White v. C. & N. W. R. Co., supra,* and gives effect to *Rohde v. C. & N. W. R. Co., supra.* It is a matter of common knowledge and experience that travelers approaching a railway crossing at a time when gates or flagmen are ordinarily or usually maintained, take into consideration that fact in determining their course of conduct, and it is for the jury to determine whether or not, in a particular case, a traveler has given that circumstance such weight and consideration as the great mass of mankind ordinarily do under such circumstances, except in cases where it clearly appears that the traveler has approached the crossing in a careless and heedless manner without the proper regard for his own safety, as in the *White Case.* Nor does this excuse the traveler from exercising a higher degree of caution in approaching a crossing where the view is obstructed than where it is clear. Neither does it necessarily follow that because there is ordinarily a flagman or gate maintained at a crossing where an injury occurs that in all cases a jury issue is raised. Each case must depend upon its own facts.

We think the contention of the defendant *Chicago & Northwestern Railway Company,* that it is not a proper party, is ruled by *Franke v. C. & N. W. R. Co.* 170 Wis. 71, 173 N. W. 701.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment upon the verdict as rendered by the jury.

The following opinion was filed December 2, 1920:

PER CURIAM. The defendants' motion to substitute "John Barton Payne, agent designated by the President under the 'Transportation Act of 1920'" (41 U. S. Stats. at Large, 456, ch. 91), is presented for the purpose of having the judgment in this action satisfied and paid out of the funds appropriated by Congress under this "Transportation

Act of 1920." The recovery in this case was for injuries the plaintiff suffered while the railway company was under federal control under the act of Congress providing for the operation of transportation systems, and hence the judgment claim is one to be settled and paid pursuant to the provisions of the "Transportation Act of 1920." The plaintiff insists that any right he has against the defendant railway company for satisfaction and payment of this judgment shall be preserved to him. We do not regard that this motion necessarily demands determination of his rights in this respect, and therefore decline to pass judgment on his right of satisfaction of this judgment against the *Chicago & Northwestern Railway Company*. It is manifest that the judgment is a proper claim to be paid and settled out of the funds appropriated under the provisions of the "Transportation Act of 1920." It therefore seems appropriate that "John Barton Payne, agent for the United States Railroad Administration," be substituted as the defendant in place of the above named defendants and respondents and that the mandate heretofore entered in this court be amended.

The mandate heretofore entered in this action in this court is hereby amended to read as follows:

Judgment reversed, and the cause remanded to the circuit court for Dane county with directions to substitute "John Barton Payne, agent designated by the President under the 'Transportation Act of 1920,' " as sole defendant and to enter judgment upon the verdict rendered by the jury in favor of the plaintiff against the defendant. No costs allowed to either party on motion.