PLAUTZ, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*February 8—March 6, 1923.*

*Railroads: Grade crossings: Failure to sound signals: Duty of traveler: Degree of care: Damage to property.*

1. Sub. 6, sec. 1809, Stats., relating to the degree of negligence which bars recovery in case of personal injury or death caused by the failure of a railroad company to comply with the statutory requirements relating to signals at grade crossings, does not·apply in an action for the recovery of damages to personal property.

2. While the strict rule of ordinary care is somewhat relaxed under sub. 6, sec. 1809, Stats., the statute does not relieve an automobile driver, on crossing a railroad track, of the duty to look and listen when approaching the zone of danger and at the last practicable or reasonable opportunity.

3. An automobile truck driver approaching a railroad crossing on a bright day at a point where his view was obstructed by brush, but where a "Look out" sign and right-of-way fence were visible, who had been instructed to stop before he crossed the track, and who could observe an approaching train 483 feet away when he was fifty feet from the crossing, and had a clear view for a distance of 1,250 feet when he was ten feet from the track, is guilty of more than slight negligence, precluding the recovery of damages to the truck, which was struck by a train running at a moderate speed. *Gordon v. Ill. Cent. R. Co.* 168 Wis. 244, and other cases, distinguished.

APPEAL from a judgment of the circuit court for Lincoln county: A. H. REID, Circuit Judge. *Reversed.*

The appeal is from a judgment in plaintiff's favor for damages sustained by plaintiff's truck in a collision with a passenger train of the defendant. The facts will appear in the opinion.

For the appellant there was a brief by *H. J. Killilea* and *Rodger M. Trump,* both of Milwaukee, and *John Van Hecke* of Merrill, and oral argument by *Mr. Trump.*

*Michael Levin* of Milwaukee, for the respondent.

DOERFLER, J.  On a bright, clear morning, at about 8:45 o'clock, of July 7, 1921, one Arthur Seehafer drove plaintiff's Nash truck in an easterly direction on the so-called Town Line road in said county onto the railroad track of the defendant, and was struck by the engine of a passenger train of the defendant hauling four cars and running south between Tomahawk and New Lisbon, a short distance north of Merrill.  Seehafer was killed in the collision and the truck was demolished.  This action was brought by plaintiff for the recovery of damages for the destruction of the truck.

The following appears from the opinion of the trial judge:

"The truck driver approached the crossing where the accident occurred upon a rather obscure road, crossing the railroad at right angles at about the middle of a long sweeping four-degree curve of the railroad track. . . . The truck in approaching descended a short little hill, with the view on both sides shut in by a growth of high brush completely covering the land on both sides of the road to the point where it entered upon the right of way of the railroad. From this point to the crossing the traveled track descended slightly, and then rose up gradually about eighteen to twenty-four inches to the crossing.  There was a prominent 'Look out for the cars' sign at the crossing, and also cattle-guards and fences.  An adult person walking on the roadway, or riding on the seat of an automobile truck, in approaching from the west could not readily see the rails of the railroad track until close up to them.  The truck driver, when fifty feet from the crossing, could see any large object on the track to the north 483 feet from the crossing.  When forty feet from the track he could see to the north 844 feet. When thirty feet from the track he could see to the north 1,009 feet.  When twenty feet from the track he could see to the north 1,081 feet.  When ten feet from the track he could see to the north 1,250 feet.  There is no evidence as to whether the truck driver looked or listened for a train, excepting as inferences may be drawn from the fact that he drove upon the crossing and was struck.  There is no clear evidence as to the speed of the truck.  The train appears to

have been going about thirty-five or forty miles per hour, a moderate and lawful speed. . . . The truck driver was an experienced automobile driver, nearly twenty-one years of age, who was engaged in going through the country gathering cream for the plaintiff's creamery. He had been working for the plaintiff one and one-half months. His predecessor in the job had gone with him over the route once or more and had told him to stop at this crossing."

One Elmer Neubauer, who had been employed as a truck driver for the plaintiff, and who preceded the deceased in his employ in covering this route, in testifying for the plaintiff stated that he would drive up pretty close to the track and would stop before he made the crossing. He further testified on cross-examination as follows:

"*Q.* You broke him into the route, didn't you? *A.* Yes, sir. *Q.* How long did he drive the route? *A.* Two weeks with me. *Q.* Did you instruct him to stop at that crossing the same as you had? *A.* Yes, sir, he stopped till I was with him. *Q.* And where would you stop when you showed him the place to stop? *A.* So I could look up the track nicely."

The jury in the special verdict found (1) that the defendant's employees failed to blow the locomotive whistle at a distance of eighty rods north of the railway crossing just before the collision; (2) that the defendant's employees failed to ring the bell continuously while passing over the last eighty rods before reaching said crossing; (3) that the failure to give such warning or warnings was the proximate cause of the collision; (4) that the driver of the truck did not fail to use ordinary care in approaching the crossing and was not guilty of negligence which proximately contributed to the collision; and (5) that the driver of the truck was not guilty of more than a slight want of ordinary care which proximately contributed to produce the collision.

At the close of the evidence defendant's counsel moved for a directed verdict in defendant's favor, which was denied

by the court, and the refusal of the court in that behalf is the basis of defendant's appeal.

It is conceded by defendant's counsel that there was sufficient evidence in the case to warrant the jury in finding the defendant guilty of negligence in the respects referred to in the verdict, so that the only question presented herein is whether as a matter of law the plaintiff failed to use ordinary care which proximately contributed to produce the collision. The usual signs indicative of a railroad crossing, namely, a "Look out for the cars" sign, cattle-guards, and a fence inclosing the railway right of way, were present and visible. The morning when the accident occurred was clear and bright. This was not the first time that the driver had driven over this crossing, for the evidence clearly shows that for two weeks prior to the accident, in company with his predecessor, one Neubauer, he had made this crossing, and a special caution had been given him to stop before crossing the tracks at a point where he could clearly observe the approach of the train and thereby avoid a collision. At a distance of fifty feet from the crossing he could observe an approaching train 483 feet away, and his view as he approached the crossing enlarged, so that when ten feet from the track he had a clear view towards the north a distance of 1,250 feet. While the learned trial judge in his opinion found that the rails were not readily visible until the driver approached within a very short distance of their location, the other evidences of the existence of a railroad and the possibility of trains passing at any time were clearly shown by the existence not only of the right-of-way fence but of the "Look out" sign and of the cattle-guards.

The situation here differs materially from that presented in the case of *Shaver v. Davis,* 175 Wis. 592, 185 N. W. 227. In the *Shaver Case* there was evidence to show that the plaintiff was unfamiliar with the crossing; that the tracks and roadbed were covered by snow; that at the time

of the accident the snow was drifting and there was a heavy wind; that the driver was compelled to raise the windshield three or four inches in order to see in the direction in which he drove, and that the right-of-way fences and the cattle-guards were missing. So that the court in that case, by reason of the peculiar situation there existing and of the difficulties encountering the driver, held that the question of contributory negligence was properly one for the jury. No further comment is necessary to differentiate the instant case from the *Shaver Case*.

Plaintiff's counsel also relies upon *Gundlach v. C. & N. W. R. Co.* 172 Wis. 438, 179 N. W. 577, 179 N. W. 985. In the *Gundlach Case* the action was for injuries to the driver, whose view of the crossing was obstructed, and who relied on the fact that the stop signal was in the place where it customarily was when not in use, and upon the further fact that the flagman was not present, and under such facts this court held that the question of contributory negligence of the driver was for the jury.

While the strict rule of ordinary care is somewhat relaxed under the provisions of sub. 6, sec. 1809, Stats., such statute does not relieve a driver, upon crossing a railroad track, of the duty to look and listen when approaching the zone of danger and at the last practicable or reasonable opportunity. *Bahlert v. C., M. & St. P. R. Co.* 175 Wis. 481, 185 N. W. 515; *White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N. W. 148; *Puhr v. C. & N. W. R. Co.* 171 Wis. 154, 176 N. W. 767.

While in the *Gundlach,* the *Shaver,* and the *Bahlert Cases* the actions were for personal injury coming under the provisions of sub. 6, sec. 1809, Stats., the instant case is brought for the recovery of damages to personal property, and therefore a slight want of ordinary care proximately contributing to the injury would necessarily defeat plaintiff's right of recovery. But under the rulings of this court as above referred to, if the above section of the statute were appli-

cable (which we expressly hold it is not), nevertheless we would be obliged to hold in this case as a matter of law that the deceased was guilty of more than a slight want of ordinary care which proximately contributed to the collision.

The differentiating features in the case of *Gordon v. Ill. Cent. R. Co.* 168 Wis. 244, 169 N. W. 570, are clearly set forth in the opinion of this court in the *Bahlert Case,* and reference is hereby expressly made thereto.

It is therefore held that the motion to direct a verdict as requested by defendant's counsel should have been granted.

*By the Court.*—Judgment reversed, with directions to enter judgment for the defendant dismissing plaintiff's complaint with costs.