Van Dunk, Respondent, vs. Chicago & Northwestern Railway Company, Appellant.

*December 8, 1925—January 2, 1926.*

*Railroads: Accidents at grade crossings: Failure of traveler to look and listen: Slight want of ordinary care: Relying on train being on time: Proximate cause: Excessive speed of train: Absence of flagman: Instructions: Slight negligence and slight want of ordinary care.*

1. Testimony of witnesses as to whether the view at a railroad grade crossing was obstructed, based on mere estimates, must yield to evidence based on actual measurements by disinterested and unimpeached witnesses. p. 480.
2. Where deceased, driving an automobile, approached a railroad track under circumstances which did not tend to divert his attention from the train, and attempted to cross without looking or listening, such action was, as a matter of law, more than a slight want of care. p. 485.
3. The duty of one approaching a railroad track at a crossing to look and listen is absolute, and the absence of a flagman from his post, or his negligence, or the absence of a signal or its failure to function, does not absolve one from such duty. p. 482.
4. It is not the exercise of ordinary care for one approaching and about to cross a railroad track to rely on his reasoning processes as to the time for the arrival of a train, instead of looking and listening. p. 483.
5. Although the speed of the train was excessive and the crossing watchman was not on duty, it is *held* that the proximate cause of the collision was the failure of the deceased to look and listen when he approached the crossing. p. 485.
6. In an instruction as to slight want of ordinary care, the adoption of a definition sometimes used by this court when defining slight negligence was improper, since the terms are not convertible. p. 486.

Appeal from a judgment of the circuit court for La Crosse county: R. S. Cowie, Circuit Judge. *Reversed.*

*John F. Baker* of Milwaukee, for the appellant.

For the respondent there was a brief by *Geo. H. Gordon, Law & Gordon* of La Crosse, and oral argument by *Stanley B. Gordon* and *Geo. H. Gordon.*

JONES, J.   This action was brought by the widow of John Van Dunk to recover damages for her husband's death, which occurred when the automobile which he was driving collided with a train of the defendant company.   The accident happened about 7:30 o'clock in the morning on September 17, 1924, as the deceased was crossing the single-track line of the defendant company at the point where it crosses Second street in the city of Onalaska, Wisconsin. The deceased was driving in a southeasterly direction on Second street, and, due to the fact that a street-car line occupies the west portion of the highway, causing all the traffic at this point to move on the east portion of the highway, was driving along the center or left center of the roadway.   The street is eighty feet wide from lot line to lot line. After passing over the railroad track of the defendant company the course of traffic passes over the street-car line and continues on the west portion of the highway.   The collision took place just as the deceased was crossing the railroad track and crossing over to the west side of the highway. The railroad track crosses Second street at an angle of about 120 degrees, and near the junction of the east side of the road and the northeasterly rail of the track and about twenty feet from the track is a switchman's shanty some eight feet high and about seven feet wide.   There were trees along the side of the street which it is claimed interfere with the view to some extent.   The usual stop-look-and-listen sign was near the crossing in full view.   .

On the morning in question the deceased, a man forty-eight years old, was driving a Studebaker touring car with several sacks of potatoes in the rear portion of the car.   He was driving at about twelve miles an hour as he approached the railroad track, and was struck just as he was crossing over to the west side of the road.   The deceased was familiar with the crossing, being accustomed to make this trip to La Crosse about once a week, but, due to the change in the hours, the signalman was not on duty as he customarily was

when the deceased made this journey. The train which struck the automobile of the plaintiff was forty-five minutes late, and there was another train due from the opposite direction at about this time in the morning.

The testimony of witnesses was to the effect that the deceased looked to the right but not to the left; that the bell of the train was ringing and that the whistle had been blown previously to the accident; that one bystander waved and shouted to the deceased; that the deceased was driving at a rate of about twelve miles an hour and that the train was traveling at from twenty-three to thirty-five miles an hour.

On the question whether a view of the tracks to the south could be had a reasonable distance from the crossing there was a conflict in the evidence. One of the plaintiff's witnesses, the city engineer of La Crosse, testified that the view to the south was unobstructed after the plaintiff reached a point thirty-five to forty feet north of the crossing and that from that point there was a view of one hundred feet. Another witness testified that when within thirty-five feet of the crossing he could see one hundred feet down the track. Another testified that one had to be within thirty to forty feet in order to get a view down the track, and another testified that when within eighteen or twenty feet one could see down the track about a block. A witness testified over objection that on one occasion she did not see the approaching train until she was close to the shanty. An engineer of the state highway commission, who took measurements, was called by the defendant and testified that 300 feet from the place of crossing in the middle of the course of the southbound traffic one could see a distance of 235 feet down the track to the south; that 100 feet north of the crossing one could see 420 feet down the track to the south; and that at a point 50 feet north of the crossing a distance of 900 feet down the track to the south was visible. The plaintiff contended, however, that the points from which the engineer

witness for the defendant took his measurements were not in the course which the deceased took.

The jury found that the train was traveling in excess of twelve miles an hour and that this was a proximate cause of the accident; that a want of ordinary care on the part of the deceased contributed to cause the accident, but that such want of ordinary care was only slight; and that the change in the hours of the signalman was a proximate cause of the collision. Upon this verdict judgment was rendered for the plaintiff, and from that judgment the defendant appeals, contending that the deceased was guilty of more than slight want of ordinary care as a matter of law; that the speed of the train was not the proximate cause of the accident; and that the decision of the trial court was so clearly based upon an erroneous conception of the law as to require a reversal of the judgment; and that the jury was improperly instructed.

No measurements were made by any witnesses in behalf of the plaintiff. Numerous photographs were taken and offered in evidence for the plaintiff for the purpose of showing the situation and the obstruction to the view while looking south, but none were taken within a distance of 150 feet from the place of crossing. The area about the crossing is comparatively level and the portion of the street east of the street railway track is from twenty-eight to thirty feet wide. There are two lines of travel on the traveled portion of the street, one north-bound and the other south-bound. Although the claim is made that the observations made by witnesses for the defendant from which their measurements were taken were not in the line of travel of the deceased, the testimony is that they were taken from the center of the south-bound traffic, and the testimony of the line of travel pursued by the deceased was not very definite.

The city engineer, a witness for the plaintiff, testified that the trees varied in height from twelve to fifteen feet

and that the branches extended from ten to twelve feet; that they obstructed the view behind the flagman's shanty but not in front of it.   The accident did not occur at the crossing of two streets, but at a point on Second street between "H" and "G" streets where the line of travel on Second street crossed diagonally over the railroad track at such an angle that as the deceased approached the point of crossing he could look almost straight, down the track to see the coming train, the. obstruction to the view already described being the only obstacle.   The observations and measurements as to the view down the railroad track were by the civil engineer of the Wisconsin highway commission, presumably a disinterested witness.   The testimony of the witnesses for the plaintiff on this subject was almost entirely based on mere estimates, and it has been frequently held by this court that such evidence must yield to that based upon actual measurement by disinterested and unimpeached witnesses.   *Wanta v. Milwaukee E. R. & L. Co.* 148 Wis. 295, 134 N. W. 133; *Burroughs v. Milwaukee,* 110 Wis. 478, 86 N. W. 159; *Konkel v. Pella,* 122 Wis. 143, 99 N. W. 453; *Busse v. State,* 129 Wis. 171, 108 N. W. 64.   An inspection of the map and photographs offered in evidence by the plaintiff's counsel tends to demonstrate that the plaintiff had the opportunity to see the approaching train in ample time to avoid the accident if he had been looking and giving attention.   Four or more witnesses heard the whistle blowing, and some of them were much farther away from the crossing than the plaintiff.   The answer of the jury that the defendant did not "fail to ring the engine bell when within twenty rods of the crossing where the collision occurred, and continuously thereafter until said crossing was reached by the train in question," was well sustained by the evidence.   The witness who tried to warn the deceased swore that he was about forty-five or fifty feet from him and that he shouted and waved his hand as he saw the

danger and the coming train. Other witnesses heard this
shouting, one of whom at least was further from the cross-
ing than the deceased. Other witnesses heard the rumbling
of the train. One witness had stopped his car on the oppo-
site side of the track seventy-five to one hundred feet dis-
tant, waiting for this train to pass, when the collision
occurred. The automobile of the deceased and the brakes
on it were in good condition and there were no side curtains.
It was under such conditions as these that the deceased drove
his car upon the track without stopping or changing his
speed and met his untimely death. It has seldom happened
that a collision case on a railroad crossing has come to this
court in which there was such a mass of undisputed testi-
mony showing warning of approaching danger, and it would
have been strange if a fair-minded jury had found that the
deceased was in the use of ordinary care.

But it is argued that the judgment should be affirmed by
reason of the answer of the jury that the want of ordinary
care was no more than a slight want of ordinary care.
Counsel rely on sec. 192.27 of the Statutes, part of which
is as follows:

"(6) In any action brought by any person or his legal
representatives against a railroad company or corporation
operating a railroad in this state, to recover for personal
injuries or death, if it appear that the injury or death in
question was caused by the negligent omission of a railroad
company or any such corporation to comply with the re-
quirements of section 192.27, the fact that the person in-
jured or killed was guilty of slight want of ordinary care
contributing to the injury or death shall not bar a recov-
ery. . . ."

The court submitted to the jury a question as to changing
the hours of the flagman, and they found that this was not
negligence on the part of the defendant, but that it was a
proximate cause of the injury to the plaintiff. This change
was not one violating the terms of the statute. The only

grounds of negligence violating the terms of the statute which were submitted were the ringing of the bell and the speed of the train. As already stated, the jury found in favor of the defendant as to the ringing of the bell continuously. Since the jury found that there was no want of ordinary care in changing the hours of the watchman, their finding that this was the proximate cause of the injury cannot be made the basis of a judgment in the plaintiff's favor, although as will be seen the fact of the change was not entirely irrelevant on the question of contributory negligence.

It follows that the only act of the defendant's agents which under the proof and answers of the jury may be considered as a violation of sec. 192.27 was the unlawful speed of the train. It is the claim of counsel for the defendant that want of ordinary care on the part of the plaintiff as found by the jury is more than a slight want of ordinary care as a matter of law, and that failure to look and listen constituted more than a slight want of ordinary care as a matter of law. Various arguments are made by counsel for the plaintiff as excusing the deceased from the necessity of using the degree of care usually required of those who are about to cross a railroad track. Among them is the absence of the flagman, and it is argued that the deceased was familiar with the usual custom of the defendant in keeping a flagman at the crossing and that in all probability he was not aware of the change. The question is not a new one in this court, and the rule has been approved that the absence of a flagman from his post, or his negligence, does not absolve a person, as he approaches a railroad track for crossing, from the duty of looking and listening, and that his duty is absolute. *Gundlach v. C. & N. W. R. Co.* 172 Wis. 438, 179 N. W. 577, 985; *White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N. W. 148; *White v. C. & N. W. R. Co.* 102 Wis. 489, 78 N. W. 585. The same is true as to the absence of a stop signal (*Gundlach v. C. & N. W. R. Co., supra*), and as to the failure of

an electric bell to ring although it may be expected to ring (*Hains v. Johnson,* 154 Wis. 648, 143 N. W. 653). The same rule applies when gates are raised, although customarily let down to bar the way to the track when a train is about to pass. *White v. M., St. P. & S. S. M. R. Co., supra.* These decisions proceed upon the theory that it is the paramount duty of the traveler to use his faculties and ordinary care even though the other party may be negligent; and that a traveler is not freed from the plain duty understood by all of looking and listening when about to cross a railroad track even though some customary precaution for the protection of the public may have been omitted by the railroad company. Counsel for the plaintiff also rely on the facts that the train from the south was forty-five minutes late and that it was about time for a train from the north to arrive. It does not appear whether or not the deceased knew the times for the arrival of trains or that he knew whether either train was on time or not. In any event it was his duty to look in both directions, and according to the only testimony on the subject he only looked in one. This court has spoken on this subject in no uncertain terms. It is not the exercise of ordinary care for a person approaching and about to cross a railroad track to rely on his reasoning processes as to the time for the arrival of a train. As was said in *Guhl v. Whitcomb,* 109 Wis. 69, 85 N. W. 142:

"The known presence of a railway track is itself notice of the momentary peril of a passing train at all times, and the duty to look and listen is not relaxed by any opportunity for theorizing or difference of opinion as to whether a train is or is not likely to pass. . . . Observation, not logic, is the proper precaution." See, also, *Haetsch v. C. & N. W. R. Co.* 87 Wis. 304, 58 N. W. 393; *Hansen v. C., M. & St. P. R. Co.* 83 Wis. 631, 53 N. W. 909.

We are not holding that such facts as the absence of a watchman and the time of the arrival of trains were immaterial or that they should not have been a subject of inquiry.

They were circumstances proper to be considered both on the question of ordinary care and that of a slight want of ordinary care, but, as already indicated, they did not relieve the deceased from the duty of using his senses of sight and hearing as he approached the crossing.

The decisions prior to the adoption of the statute already mentioned do not entirely cover the situation where ·the issue is whether there was only a slight want of ordinary care, but they are very important in the consideration of what constitutes ordinary care, and the finding of the jury that the deceased failed in this respect has a very important bearing on the other question, and for this reason: it is hard to conceive how the jury could find the deceased negligent on any other ground than that he failed to look or listen, or both. He was traveling in the morning on a sunny day and had no companion. He had normal sight and hearing and no physical infirmity. There were no other trains or objects to distract his attention and no noises were proven except the blowing of the whistle, the ringing of the bell, the rumbling of the train, and the shouting of the witness who tried to give warning. These sounds were all adapted not to divert, but to concentrate attention on the coming train. The statute above quoted has been considered in several decisions of this court and it has been uniformly held that failing to look and listen for an approaching train is more than a slight want of ordinary care. *Twist v. M., St. P. & S. S. M. R. Co.* 178 Wis. 513, 190 N. W. 449; *Puhr v. C. & N. W. R. Co.* 171 Wis. 154, 176 N. W. 767; *Todoroff v. C. & N. W. R. Co.* 169 Wis. 554, 173 N. W. 214; *Plautz v. C., M. & St. P. R. Co.* 180 Wis. 126, 192 N. W. 381; *Sweeo v. C. & N. W. R. Co.* 183 Wis. 234, 197 N. W. 805; *Roth v. C., M. & St. P. R. Co.* 185 Wis. 580, 201 N. W. 810; *Dax v. C., M. & St. P. R. Co.* 185 Wis. 432, 201 N. W. 736; *Bahlert v. C., M. & St. P. R. Co.* 175 Wis. 481, 185 N. W. 515; *McMillan v. C., M. & St. P. R.*

*Co.* 179 Wis. 323, 191 N. W. 510. Counsel for the respondent particularly rely on the following cases: *Shaver v. Davis,* 175 Wis. 592, 185 N. W. 227; *Gundlach v. C. & N. W. R. Co.* 172 Wis. 438, 179 N. W. 577, 985; *Gordon v. Ill. Cent. R. Co.* 168 Wis. 244, 169 N. W. 570. In the *Gordon Case* there were no such warnings given of the coming train as were given in this case, according to the undisputed testimony. In the *Gundlach Case* there was testimony that the plaintiff did use care in looking in both directions for the train. In the *Shaver Case* there was evidence that the track was covered by a recent snow storm; that the accident occurred on a branch track having no fences or telegraph poles, and the plaintiff denied knowledge of the existence of the track. There was also evidence as to the difficulty of the management of the truck. Of course it is true that each case must be decided on its own facts, and none of the decisions cited by either party is on all-fours with the one before us. But we are forced to the conclusion that on the testimony and the physical facts as shown by the maps and photographs, the deceased undertook to cross the track without any observance of fundamental rules long adhered to by this court, and that in so doing his want of ordinary care was more than a slight want of ordinary care as a matter of law within the meaning of the statute.

It is argued by counsel for the plaintiff that it was the speed of the train and not any negligence of the deceased which caused the collision. It is not necessary to restate the facts bearing on this question. The jury found that the want of ordinary care on the part of the deceased proximately contributed to cause his death. The testimony is undisputed that the engineer did his utmost to avoid the collision when he saw the deceased. What might have happened if the train had been going more slowly would be pure speculation. We are convinced that the proximate

cause of the tragic event was the want of care by the deceased already described.

Numerous exceptions were taken to the instructions given, but in view of our decision their discussion becomes unnecessary, except that we think it best to refer to one of them. The jury were told:

"By 'a slight want of ordinary care' is meant an absence of that care and vigilance which persons of extraordinary prudence and foresight are accustomed to use. The court knows of no way in which he can more definitely define what is meant by 'a slight want of ordinary care' than the definition which I have just given to you. The question is addressed to your general knowledge of the English language and what the words *slight* and *ordinary* mean in the ordinary affairs of life. The courts haven't given us any more light upon the definition or what constitutes a definition of slight ordinary care, so it is addressed to your sound discretion under the facts and circumstances in the case."

The charge continued and enumerated the main circumstances which might have a bearing on the subject. In the instruction as to slight want of ordinary care the court adopted a definition sometimes used by this court when defining slight negligence. *Astin v. C., M. & St. P. R. Co.* 143 Wis. 477, 483, 128 N. W. 265. But it has been often held that slight negligence and slight want of ordinary care are not convertible terms. *Dreher v. Fitchburg,* 22 Wis. 675; *Cremer v. Portland,* 36 Wis. 92; *Jung v. Stevens Point,* 74 Wis. 547, 43 N. W. 513. Whether under the circumstances the instruction taken as a whole was prejudicial it is unnecessary to decide. It is sufficient to say that it is a form of instruction which we do not approve.

*By the Court.*—The judgment is reversed, and the cause is remanded with directions to dismiss the complaint.